**NATIONAL REJECTORS, Inc. v. A. B. T. MFG. CORPORATION.**

No. 10142.

United States Court of Appeals
Seventh Circuit.

Oct. 10, 1950.

Rehearing Denied Nov. 2, 1950.

Writ of Certiorari Denied Jan. 2, 1951.
See 71 S.Ct. 293.

Clarence E. Threedy, Chicago, Ill., for appellant.

Clarence J. Loftus, William E. Lucas, Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN, and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff sued in the District Court to enforce a consent decree entered December 7, 1939, wherein the court adjudged that defendant had infringed Claim 1 and others of U. S. Patent 2,094,788 to Fry et al. It is undisputed that on the same day plaintiff granted defendant license to manufacture and use in coin vending machines slug rejectors embodying the patentable features described and claimed in the patent, in consideration of which defendant agreed to pay a certain stated royalty upon all machines it might thereafter manufacture embodying such features. Defendant paid royalties upon all machines it manufactured before December 14, 1942, when its activities were interrupted by the war. Subsequently, defendant, having ceased to produce its old models, began the manufacture of new ones somewhat different in character but, so far as the elements concerned in this litigation are involved, of substantially the same character as those found to infringe in the decree of 1939. The new models having appeared in the years 1946, 1947 and 1948, and defendant having failed to pay any royalty thereon, plaintiff, on September 24, 1947, asked it to report what it had manufactured and to pay royalties in accord with the license. Defendant replied that it was not then manufacturing rejectors embodying any features of the patent. After further investigation, plaintiff's counsel, on December 8, 1948, wrote defendant, giving it 90 days written notice of cancellation in accord with the terms of the license. The pertinent provision is: "the aggrieved party shall have the right to terminate this agreement in so far as it affects the defaulted party upon giving to the defaulting party ninety days' written notice to that effect; however, if the defaulting party makes good the breach within said ninety days, then this agreement shall continue as though no default had taken place."

Defendant did nothing within the 90 days period or thereafter to make good or excuse the alleged default in payment of royalties. Consequently, on June 10, 1949, the present suit to enforce the decree of 1939 was filed.

In the judgment of 1939, the court found that various claims of the original patent were infringed, but we are here concerned only with Claim 1 which, in the original patent, is as follows: "A scavenger device for coin-operated mechanisms, comprising a stationary plate, a movable plate having a lower coin runway, said movable plate being mounted on said stationary plate and forming therewith a coin raceway, a magnet mounted on said stationary plate above said coin runway on said movable plate and having its poles arranged to create a magnetic field across said coin path so that disks containing magnetic material will be attracted and held within said magnetic field, a movable blade mounted on said stationary plate and arranged to move across said magnetic field when said movable plate is operated and thereby remove any object lodged within said magnetic field, means for

successively operating said movable plate and movable blade, and means for restoring them to their normal, retracted positions." This claim was repeated in reissue patent 21,301, which contained also various others. However, in the present suit plaintiff relied entirely upon Claim 1 and we are concerned with no other. This fact is of some import because the reissue had not come into existence at the time of the original judgment, and plaintiff claims that, in as much as Claim 1 of the original patent was by prior judgment found to be valid and infringed by defendant and Claim 1 of the reissue patent is identical, the judgment is res adjudicata upon the issues raised by the present complaint. This is on the theory that the claim having once been held valid and infringed by defendant, the latter can not thereafter deny validity or infringement except by showing that its present product does not infringe. On the other hand, defendant insists that an estoppel against plaintiff maintaining this action has been created by the file wrapper history of the reissue patent. It asserts that there has been no adjudication as to this claim.

We have considered the argument of defendant in this connection and we find, as did the District Court, that there is no basis for a claim of estoppel against plaintiff in anything that occurred in the reissue of Claim 1. That claim, as is apparent from reading, requires means for successive operation of the movable plate and the movable blade. This provision obviously limits machines covered by the claim to such as employ such successive operation. Such was the claim when it was before the court in the original suit and such it is now. The wording is exactly the same, and its intent and interpretation having been once established by judgment against defendant, the latter is precluded from further contending that it means something else.

When the application for reissue was made, the applicant's affidavit pointed out an error in the original grant in that under all the claims included therein operation of the movable plate and movable blade must be successive in time, whereas, the applicant said, his invention covered also machines where the operations were not suc-

cessive in time. Accordingly he tendered new claims not so limited. However, he did not remove the limitation from Claim 1. It remained the same as it was in the beginning. In other words, Claim 1 relied on here, being one of the claims found to be infringed in the original judgment, is limited to a machine in which the effective operations of the two elements are successive in time. The patentee's language in his application for reissue in this respect was that whereas he had erroneously claimed only a machine wherein the operations were successive, he was entitled to file additional claims not so limited. Inasmuch as original Claim 1 with its original limitations has been preserved in the reissue patent without change, no estoppel can grow out of the reissue insofar as this claim is concerned. In this situation, it seems perfectly obvious that defendant is fully bound by the doctrine of res adjudicata as to all parts of the original judgment, which included a finding that Claim 1 of the original patent, which is the same claim now before us, was valid and infringed. And this plaintiff recognized by its consent to the judgment, by taking a license to manufacture and by its later agreement that the license applied to the reissue patent. Being the same claim of the same patentee which has been adjudged, as between the parties, valid and infringed, the District Court properly decided that defendant is fully bound under the doctrine of res adjudicata.

Defendant, although estopped to deny validity and infringement of Claim 1 by any machines which embody its invention, had a right, of course, to defend upon the ground that those now manufactured do not embody the features of the claim. It is estopped to deny validity or infringement as to all machines before the court on the original decree but not to deny that the machines it is now manufacturing embody those features. The further question upon this record, then, is whether defendant's presently alleged infringing machines employ the limited feature of Claim 1, that is, successive operations of the movable plate and the movable blade.

The trial court found that defendant's device held to infringe by the final

consent decree of December 7, 1939, did employ successive operation of the two elements and that, in its present device, the defendant has reverted to the same arrangement then held to infringe, namely, successive operation of the blade and wiper, even though their movements are simultaneously initiated, and that the accused devices are substantially the same as the device held to infringe in the prior judgment. In view of the fact that the court, having seen the devices demonstrated and heard the witnesses, expert and otherwise, of each of the parties, having their conflicting testimony before it, made a finding which has adequate substantiation in the record, under the federal rules of procedure, we have no right to interfere. Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672; Hazeltine Research Inc. v. Admiral Corp., 7 Cir., 183 F. 2d 953. We might well end this litigation with that observation. However, we think it only well to add that we have examined carefully the record and the testimony of the witnesses and that we conclude that the court not only was correct but that indeed it could not properly have decided otherwise.

This invention has to do with the rejection of slugs from a coin vending machine. Its object is to protect such machines against the use of slugs of material other than that employed in genuine coins. These are usually steel or iron and are, therefore, magnetic. The patentee's elemental idea lies in the use of a magnet in the coin runway of the rejector which attracts and holds back a magnetic slug and prevents it from reaching the vending machine. Plaintiff's patentee solved the problem of effective removal of such spurious coins from the operating mechanism by providing a lever which, when depressed by the customer, moves a movable plate out of the way and then wipes the clogging material off and discharges it, thus rendering the clogged mechanism again operative. He accomplished this by providing means which operate first to swing the movable track to one side so that the magnetically held steel or iron slug is afforded a discharge space and, when the movable plate is thus put out

of the way, can be mechanically wiped from the magnet and discharged to unclog the machine. When the movable plate has moved, a wiper blade then engages the magnetically held slug and wipes it away from the magnet, discharging it through the space provided by the preceding operation of swinging the track away from its normal position.

It is obvious that before the detained slug can be swept away from the magnet, the plate or raceway upon which it approaches the magnet must be removed so that the wiper can force the slug down through the space which the movable plate would otherwise occupy. In other words, the lever causes both elements to move but with such timing that the wiper does not reach the slug and sweep it away from the magnet until the movable plate has been put out of the way. In this connection the District Court found: "In scavenging the coin pathway, in each of said accused devices, the first operation is the removal of the movable gate and runway, so that rejection or discharge of a slug or other foreign material will not be blocked. The second operation is the wiper blade's contacting the slug or other matter, and forcing it out of the coin pathway. These operations are successive. Defendant's expert witness, on cross-examination, admitted that in all the accused devices 'there are means whereby the movable plate with its runway is moved out before the wiper blade wipes the foreign material or magnetic coin from the magnetic field.' " We think this is the only possible conclusion that could have been reached, for if the two elements discharge their separate functions simultaneously, inoperability results.

Defendant insists that the operations are simultaneous in view of the fact that the initiation of movement of each element is simultaneous. Irrespective of their estoppel to make this assertion, because of its adjudication by the prior judgment, we think it is perfectly obvious that such is not the meaning of the words "successive in operation." The plate must be moved before the sweeper can discharge its function of removing the slug. Irrespective of when the respective movements begin, the first

must end before the other can be effective. The initiation of movement of each may be simultaneous, but the timing of the operations must be such that the useful activity of moving the plate or gate must precede the useful activity of sweeping the slug from the magnet; otherwise, the slug can not be removed.

■ There remains the question of whether the court should have given judicial sanction to the cancellation of defendant's license by plaintiff in 1948. As we have seen, defendant had bound itself to pay a royalty for each machine embodying the patentable features shown and described in Claim 1. It had been adjudged that defendant was infringing this claim, and in the license defendant obtained leave to continue to manufacture under the claim and agreed to pay a royalty. It was expressly provided, however, that if either party should fail to perform any of the obligations therein prescribed, the aggrieved party should have the right to terminate the agreement in so far as it affected the defaulting party, upon giving to the latter 90 days written notice to that effect. However, if the defaulting party made good the breach within 90 days, then the agreement would continue as though no default had taken place. Defendant having failed to make good the default within 90 days or to respond in any other manner, plaintiff some months later, on June 10, 1949, began this suit. Defendant now insists that it thought it had a right to manufacture the device found to infringe and that it is perfectly willing to pay the license fee for any machine found to infringe and that, therefore, its license should not be cancelled. However, the circumstances of the case are not such as to persuade us that the court below erred in declining to approve this contention of defendant. Throughout the extended interval during which plaintiff claimed defendant was infringing, defendant of course might have made known its position by filing a suit for declaratory judgment and depositing in open court a conditional tender of royalties on all devices claimed to infringe to await determination of the court as to whether they did infringe. It knew that plaintiff was in-

sisting that it was infringing and had given 90 days notice of termination. It took no steps to protect itself. Furthermore, the court did not forfeit the license; plaintiff did so, as it had a right to do under the plain reading of the contract of the parties. If defendant in good faith desired to have the license contract continued it could have, within the 90 days or even within six months thereafter, taken proper steps to protect itself, as we have indicated. We conclude that the District Court correctly disposed of the issue.

The judgment is affirmed.