## INDEPENDENT PNEUMATIC TOOL CO. v. CHICAGO PNEUMATIC TOOL CO.

### Civ. A. No. 47 C 855.

United States District Court
N. D. Illinois, E. D.

March 5, 1951.

See also 74 F.Supp. 502.

George N. Hibben and Harry W. Lindsey, Jr., Chicago, Ill., for plaintiff.

Floyd H. Crews and Darby & Darby, New York City, and Loftus, Lucas & Hammand, Chicago, Ill., for defendant.

HOLLY, District Judge.

Plaintiff's complaint asks for a declaratory judgment finding that claim 7 of Fitch patent No. 2,219,865 and claims 6, 8, 14, 18 and 30 of Amtsberg patent No. 2,219,883 are invalid and that said claims of the Fitch and Amtsberg patents have not been infringed by plaintiff.

Defendant in its answer and counterclaim averred that it is the owner of the Amtsberg and Fitch patents, that the patents are valid and that plaintiff was engaged in the sale of impact wrenches which infringed the claims of said patents, mentioning particular wrenches known as Thor Models 4, 6, 10, 12 and 20. Plaintiff filed an answer to the counterclaim again charging that the patents were invalid and denying the infringement.

An impact wrench and its method of operation are described as follows in defendant's brief.

"An impact tool is a device which is used to deliver a series of rotary blows or impacts in seating or releasing a screw, nut or bolt, and is to be distinguished from the ordinary direct drive power tool which applies a smooth torque rather than a rotary blow. The effect produced by the use of an impact tool is similar to that produced when a wrench having been applied to a nut and the nut tightened to the maximum extent possible by rotation of the wrench, the wrench handle is then repeatedly struck with a hammer to produce the final tightening action. * * *

"An impact wrench or tool of any type requires a blow to be delivered, and the part struck has come to be referred to in the art as an anvil, and the part carrying the striking elements as a hammer. The tool, usually either a wrench socket or a screw driver, is connected to the anvil and the motive power to the hammer. The hammer is released from engagement with the anvil between blows, and the mechanism which accomplishes this result is known as the impact clutch. * * *

"The impacting action of the tool does not start until the nut or screw meets considerable resistance. Prior to this time the nut is 'run up' on the bolt under the torque exerted by the motor, the hammer being in engagement with the anvil. Upon meeting such resistance the hammer disengages from the anvil, rotates through a predetermined arc, and re-engages, providing a rotary blow which tightens the nut. These rotary blows are delivered in rapid succession until the nut is as tight as desired. In loosening a tight nut of course the impacts occur first and the 'run-off' after it is broken loose."

Before the impact wrench was devised the common method of loosening stay bolts was by means of a wrench with a long handle operated by several men, it being necessary frequently to use a sledge hammer against the wrench handle in order to loosen the stay bolt caps. The average time required for taking down a locomotive boiler by the manual method, says defendant in its brief, was two to three days. With defendant's impact wrench, operated by one man, the boiler can be taken down, on the average, in two or three hours.

While plaintiff attacks the validity of the Amtsberg and Fitch patents counsel stated during the trial and repeated in their

reply brief that it relies primarily on the defense of non-infringement. This problem requires us to examine the claims of defendant's patents alleged to be infringed and the construction and operation of the Thor wrenches manufactured and sold by plaintiff.

First as to the Amtsberg patent. Claims 6, 8, 18 and 30 are as follows:

Claim 6. "In a tool of the character described, a rotatable driven shaft, a rotatable hammer, releasable clutch mechanism interposed between said hammer and shaft, said clutch mechanism comprising striking and stricken impact surfaces arranged to prevent relative rotation between said hammer a nd shaft when said impact surfaces are in engagement and comprising automatic means for disengaging said impact surfaces upon termination of an impact, and a rotary motor for driving said hammer, said motor having a stator and a rotor and fluid pressure means for driving said rotor, said rotor having a rigid driving connection with the hammer, whereby said rotor and hammer rotate in unison and the angular momentum of the hammer is supplemented by that of the rotor."

Claim 8. "An impact clutch comprising a hammer rotatable in either direction, a rotatable anvil having a jaw provided with impact receiving surfaces on its opposite sides, a dog pivoted to the hammer and having impacting surfaces on its opposite sides, centrifugal means for moving the dog into the orbital path of the jaw, and automatic means for moving the dog out of the orbital path of the jaw, whereby to cause the dog to deliver a succession of rotary impacts to said anvil jaw, said dog being secured against movement relative to the hammer in the direction of rotation of the hammer."

Claim 18. "An impact clutch comprising a rotatable hammer, a rotatable anvil having spaced jaws provided with impact receiving surfaces, impact dogs carried by the hammer and movable into the annular path of the jaws in response to centrifugal force to deliver a succession of impacts to said jaws, automatic retracting means operable upon termination of an impact to move the dogs out of the annular path of the anvil jaws, each of said dogs being guided on the hammer for relative movement only in a plane coincident with the axis of rotation of the hammer, whereby the hammer is positively locked against rotation ahead of the jaws."

Claim 30. "In a device of the character described, the combination of a driving head having rotation imparted thereto in either direction, a rotatable driven head, stationary clutch jaws on said driven head, rotation transmitting clutch jaws pivotally carried by said driving head centrifugally movable, into operative engagement with said stationary jaws irrespective of the direction of rotation of said driving head and capable of release to enable relative rotation between said heads, said clutch jaws arranged and disposed in a manner causing each operative engagement thereof to transmit a rotative impact to said driven head, and means automatically effecting said release upon a predetermined reduction in the rotary speed of said driving head.

■ The term "means" is indefinite, and when used in a claim must be limited to the means set forth in the specifications or their equivalents. Other means not equivalent are not covered by the patent. Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794. And see Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3.

Following is shown a drawing of the Amtsberg device as shown in Figures 1 and 2 of the patent.

Oct. 29, 1940.

Fig. 1.
Fig. 2.
Fig. 3.
Fig. 4.

INVENTOR
Lester A. Amtsberg
BY
Raymond G. Mullee
ATTORNEY

Figure 1 shows on the right hand side an air motor of the usual type. The hammer 18 is integral with the rotating cylinder 13. The striking elements 23 are mounted on pivots 24 in longitudinal slots in the hammer. These striking elements are referred to in the patent as hammer dogs. They move outwardly through centrifugal force pivoting around the pivots until the left hand edges of the dogs come in contact with the jaws 25 of the anvil 6. This contact is shown more clearly in Figure 2. In moving outwardly the dogs compress the spring 27 through the links 31 and the slidable collar shown at 29 in Figure 2. Figure 2 of the drawing also shows the dogs in striking position, the flat faces of the dogs then being in contact with the flat faces of the anvil 25 R.

The features of the device which in the opinion of the patent office showed invention were, as stated by counsel for defendant, (1) that the hammer dogs were centrifugally mounted, (2) that the hammer momentum was supplemented by the momentum of the rotor, (3) that there was no relative rotation of the anvil and the hammer when the impact surfaces were in flat face engagement, (4) that the hammer dogs were guided for movement relative to the hammer in a plane coincident with the axis of rotation to the hammer to lock the hammer against rotation ahead of the anvil jaws and (5) that means were provided for automatically effecting release of the driving and driven head upon a predetermined reduction in the speed of the driving head.

■ But what counsel calls "features" were, mostly results of a method of construction, not operative results which were unpatentable. If the same results are obtained by a construction which is not an equivalent of the patented device the accused structure does not infringe. It is an abuse of the term equivalency to employ it to cover every combination which is used to accomplish the same result. Beach v. Hobbs, 1 Cir., 92 F. 146, 150, 151. In Burr v. Duryee, 1 Wall. 531, 17 L.Ed. 650, the court said that to constitute equivalency there must be a "copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. * * *" That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used are therefore mere equivalents for those of the other". This language was quoted by the Supreme Court in Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 569, 18 S.Ct. 707, 723, 42 L.Ed. 1136.

Here we do not find equivalency as defined in these cases.

■ Defendant secured the allowance by the patent office of thirty claims. Each claim, in theory of law, covers a separate invention. In Leeds & Catlin v. Victor Talking Machine, 213 U.S. 301, 319, 29 S.Ct. 495, 501, 53 L.Ed. 805, the court said, "Claims are independent inventions. One may be infringed, others not * * * One * * * may be valid, all the rest invalid." To the same effect is Stumpf v. A. Schreiber Brewing Co., 2 Cir., 252 F. 142. Plaintiff in his device did not have thirty inventions but only one, a novel combination of old elements. That he did have, but he has greatly complicated the work for the court by the multitude of claims and the ambiguity of some of them. The allowance of a large number of claims for single inventions has been condemned by the Supreme Court in Carlton v. Bokee Baker, 17 Wall. 463, 84 U.S. 463, 471, 21 L.Ed. 517, where the court said: "We think it is proper to reiterate our disapprobation of these ingenious attempts to expand a simple invention of a distinctive device into an all embracing claim calculated by its wide generalizations and ambiguous language to discourage further inventions in the same department of industry * * *."

■ As stated above, many of the claims here are caused to be rather ambiguous by the use of the term "means". Of course the only "means" protected by a patent are the "means" described in the specifications and their equivalent. Other

means of an entirely different character, though they bring about the same result, do not infringe. It is not an idea that is patentable, nor the results of a mechanism but a novel device or combination understandably disclosed in the specifications.

In the present case Amtsberg states that the usual impact wrench comprises a tool head, an anvil integral with the head, a rotatable hammer for delivering impacts to the anvil, a rotary motor and reduction gearing for driving the hammer, a torsionally resilient coupling between the gearing and the hammer and torque responsive means for causing successive declutching of the hammer with respect to the anvil and that among the objects of his invention is to simplify the construction and reduce the manufacturing and maintenance expense by obviating the necessity of the usual torsional coupling, governor and reduction gearing.

Features of the invention are described as a rotary air motor having a cylinder revolving around the stator, the cylinder being integral with or directly connected to the hammer to be rotated as a unity and a centrifugal speed responsive clutch.

In operation live air is continually delivered to the archiate groove 41 from whence it is conveyed through slots to the inlet side of the chamber. The difference in pressure on opposite faces of the blades tend to cause counter clockwise rotation of the cone 10 and clockwise rotation of the cylinder 15. As the hammer 16 starts to rotate the elements are in the Figure 1 position with the dogs 23 held out of the orbital path of the anvil jaws 25 by means of the declutching spring 17. The speed of the motor and hammer increases rapidly to cause the dogs 23 to be thrown into mesh with the anvil in response to centrifugal force whereupon torque is delivered through the registering impact sources 23 and 25 R on the dogs and anvil jaws respectively. Assuming that the tool head 4 is driving a right hand bolt or screw which at this time offers relatively light resistance to rotation the cylinder 15, hammer 16, anvil 6 and tool head 4 rotate as a unit. When the driven element becomes seated and its resistance to rotation increases the speed of the motor and consequently the centrifugal force on the dogs diminishes until the centrifugal force is overpowered by the spring 27 and the dogs are then restored to the Figure 1 position. As soon as the dogs are declutched the motor is relieved from the load on the tool head and is permitted to speed up throwing the dogs forwardly. Movement of a dog relative to the hammer may begin when the former passes out of rotative alignment with the bevelled face of one jaw 25 and ends when the dog strikes the end pin 26 which usually occurs before the dog has revolved far enough to strike the succeeding jaw. Continued rotation of the rotor cause a succession of rotary hammer blows each followed by sudden stoppages, or abrupt reductions of the speed of the rotor, declutching of the dogs by the spring, release of the load on the motor, sudden acceleration of the latter, forward movement of the dogs under centrifugal force and a succeeding impact to complete the cycle.

The above described method of operation is used in tightening a nut or bolt, but the operation may be reversed when it is desired to loosen the nut.

■ Both Amtsberg and plaintiff use old elements. Amtsberg does not show any novel features, nothing that has not been used before but depends upon a new combination for patentability, and this it seems to me he has. The problem presented is whether plaintiff's wrench, which was referred to throughout the trial as the Thor is substantially the same combination.

Plaintiff introduced in evidence a colored chart showing the construction and

illustrating the operation of its Thor wrench. The chart without the coloring is shown below.

of. The upper ends of the rods are engaged by forked ends of a cross member or lifter plate which is axially slidable on

## ACCUSED THOR

An anvil at the forward end of the wrench has two curved slots on opposite sides of the axis. A spindle having a cam at the upper or rearward end extends downwardly through the center of the hammer and into a central bore in the anvil so as to maintain those parts in alignment. The anvil and hammer can rotate relative to the spindle. Two impact rods are slidably mounted in the hammer and move into and out of the anvil slots so as to strike against the curved ends thereof. The upper ends of the rods are engaged by forked ends of a cross member or lifter plate which is axially slidable on the spindle and rotatable relative thereto. The lifter plate has two side grooves into which are projected tongues of two fly weights pivoted to the hammer on opposite sides of the hammer axis. The fly weights do not have impacting faces as they do not engage the anvil. Only the rods engaged the anvil, and the fly weights as they turn on their pivots project or withdraw the rods. The upper ends of the fly weights are formed with lugs which are provided with rounded cam surfaces engageable with

cam surfaces on each side of the driving cam. The driving cam has a square opening in its upper side into which fits the square end of the lower shaft of the rotor of a pneumatic moter.

The mounting rods in the hammer in relation to the anvil slots is such that the rods can strike an impact not more than once every revolution and present different impacting faces on each impact. To this end the rods are positioned at different distances from the axis of the hammer and can only engage in their respective anvil slots which are also positioned at correspondingly different distances from the anvil axis.

■ Much is said by counsel for plaintiff of the superiority in operation of its Thor wrench but I am concerned only with the question whether in its construction it is the same as that shown in the Amtsberg patent, or the equivalent thereof. They have many features in common, it is true, as they have with many other forms of impact wrenches, but the description of the two wrenches show important differences. Among them, these may be noted, that Amtsberg uses a spring to bring about clutching and declutching. Thor does not have the rigid driving connection between the rotor and the hammer which Amtsberg considered important. The Thor wrench does not infringe claims 6, 8, 14 18 or 30 of the Amtsberg patent.

### The Fitch Patent.

Defendant contends that plaintiff infringes Fitch patent No. 2,219,865 in that it provides a cam separate from the clutch to effect release of the clutch.

The Fitch device is quite like the Amtsberg except that the declutching is caused by cams separate from the clutch and anvil teeth rather than by spring action as in Amtsberg. A copy of the drawing attached to the patent is shown on page 78.

The operation of the Fitch patent is described by counsel in their briefs as follows:

Referring now to the drawings of the Fitch patent, Figure 1 shows the impacting clutch, the drive motor for which is not shown. The shaft 16 is driven by the motor and drives the spindle 17 at a substantially constant speed. While the wrench socket 23 of Figure 1 offers no substantial resistance to rotary movement, that is while the nut is being run up, the parts assume the position in Figure 1. The weights 38 pivoted on lugs 36, integral with the shaft 17, move outwardly under centrifugal force and bear against the plate 40 which in turn causes the hammer member 25 to move axially downwardly as shown in Figure 1 until the teeth thereof engage with the teeth or jaws on the anvil member 21. The hammer 25 is driven by the spindle 17 through balls 20.

The parts remain in this position until the resistance of the nut to tightening increases, at which time the axial component of the force transmitted from the balls 30 upward to the hammer 25, correspondingly increases. Since the resistance of the anvil 21 to rotation increases abruptly and spindle 17 continues to turn while the hammer is locked against further rotative movement, the spindle necessarily moves relative to the hammer and assumes the position shown in Figure 2 causing the hammer to be lifted out of engagement with the anvil as a result of the camming action of the helical groves 31 R, Balls 30 and spiral shoulders 32 R. As the hammer moves axially, that is, upwardly in Figures 1 and 2, the centrifugal weights are caused to be retracted and, upon freeing of the driving connection between the hammer teeth 27 and anvil teeth 28, the hammer is released for rotary movement and begins to accelerate, starting from a condition in which the hammer is substantially at rest and continuing until the instantaneous speed of the hammer becomes considerably greater than the speed of the driving spindle. The greater speed of the hammer with respect to the driving spindle results from the fact that during the acceleration period the hammer is driven by the spindle through the balls 30 and the hammer exceeds the speed of the spindle due to the action of the centrifugal weights which force the hammer forwardly under the action of the camming slots and balls.

Fig-1.

Fig.2.

Fig.3.

INVENTOR
CLIFFORD E. FITCH.
BY
Raymond G. Mullee
ATTORNEY

D-120

In my opinion while there are some similarities between the Fitch and plaintiff's device (as there are between Fitch and Amtsberg patent in suit) the differences between them are such that plaintiff's Thor does not infringe Claim 7 of Fitch.