**INDEPENDENT PNEUMATIC TOOL CO. v. CHICAGO PNEUMATIC TOOL CO.**

**Nos. 10408, 10409.**

United States Court of Appeals Seventh Circuit.

March 4, 1952.

Floyd H. Crews, New York City, William E. Lucas and Loftus, Lucas & Hammand, all of Chicago, Ill. (Darby & Darby, Donald J. Overocker, and Raymond G. Mullee, all of New York City, of counsel), for Chicago Pneumatic Tool Co.

Harry W. Lindsey, Jr., George N. Hibben, Chicago, Ill., for Independent Pneumatic Tool Co.

Before KERNER, LINDLEY, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

This was a complaint in which plaintiff Independent Pneumatic Tool Company prayed that the court enter a declaratory judgment that defendant's Amtsberg patent 2219883, issued October 29, 1940, on an application filed June 5, 1937, and Fitch patent 2219865, issued October 29, 1940, on an application filed October 14, 1938, were invalid, and that plaintiff's "Thor Wrench" was not an infringement of either of these patents. The defendant Chicago Pneumatic Tool Company filed a counterclaim in which it asserted that its patents were valid and that plaintiff's wrenches infringed claims 6, 8, 18 and 30 of the Amtsberg patent and claim 7 of the Fitch patent. The trial judge found that neither of defendant's patents disclosed any novel feature; that both Amtsberg and Fitch used old elements in the construction of their wrenches and for patentability depended upon a new combination of old elements, and that while both plaintiff's and defendant's wrenches had many features in common, yet there were important differences. He held that the two patents were valid but not infringed, 96 F.Supp. 70, and both parties have appealed.

The record discloses that the oral testimony covered every factual element relative to the issues. During the trial colored charts were explained in detail, cut-away and disassembled models of wrenches were manually demonstrated, and high speed movies and still enlargements of these movies illustrating the operation of the various parts of the wrenches were shown.

The patents are for improvements in impact tools having particular application to impact wrenches for tightening and loosening nuts and bolts by a rotational hammer action, and the principal issue is infringement. The patents and the claims in issue are correctly described in the District Court's opinion, and since a general description of impact tools also appears in the opinion we shall not repeat it here.

Impact tools are not new. Rotary impact wrenches and impact wrenches utilizing centrifugal means were in existence and were used as far back as 1928, as is evident from Niedhammer's patent, issued on January 24, 1928. It disclosed a tool adapted for tightening or loosening nuts by impacting a series of hammer blows in a rotary direction against an anvil secured over a nut, the tool being torque responsive and declutched by a camming action. A spring is used instead of centrifugal force to urge the impact. A British patent, accepted in December, 1930, made known that centrifugally operable impact dogs on a rotatable hammer could be utilized in a rotary impact tool. The impact elements are clutched by centrifugal force and declutched by a camming action.

In 1934 a torque-responsive wrench was commercially sold by Ingersoll-Rand, and in 1936 defendant manufactured and sold a wrench embodying a torque-responsive declutching means in the form of a separate cam. Prior to Amtsberg, Fitch, not to be confused with the Fitch patent in suit, designed a wrench, its hammer being driven by a cam which served as a non-rigid and non-integral drive means and as an automatic declutching means.

As we have observed, the question is whether plaintiff is guilty of infringement. Because we believe the claims in suit are valid, we shall discuss only the issue of infringement.

In its brief defendant says that the distinguishing features of the Amtsberg structure are that the motor and hammer come to a complete stop upon the delivery of the blow to the anvil jaws. The striking elements, having stopped, are not subject to any centrifugal force and are returned to their position of rest, i. e., disengaged

position, by spring pressure, and due to this arrangement no portion of the power of the motor is utilized in moving the striking elements from the path of the anvil jaws. It also states that Amtsberg provides a flat, full contact surface between the striking element and the anvil jaws so that the blow is delivered without any camming action, or inclined surface, to soften the blow. Amtsberg's disengagement, it is claimed, is effected by light springs which become effective only after the centrifugal force on the striking elements or dogs is reduced to zero.

Amtsberg's drawings show an air motor at the right hand side and a hammer near the left hand side of the structure, the hammer being integrally formed as the lower end of a rotating cylinder so that the hammer and the rotor are a single rigid unit and rotate in unison. The striking elements, called hammer dogs, are mounted on pivots in longitudinal slots in the hammer. The dogs move outwardly under the action of centrifugal force, pivoting about the pivots until the ends of the dogs come into the path of the anvil which has two spaced, upstanding jaws, movable in a circular path. In moving outwardly, the dogs compress a spring through links and a slidable collar, the flat faces of the dogs then being in contact with the flat faces of the anvil, and deliver a blow thereto, and as the blow is struck, the anvil and nut are turned, the centrifugal force is spent, and the hammer and the rotor, due to their rigid one-piece construction, are completely stopped, and when the dogs are disengaged from the anvil, the rotor and hammer resume rotation.

The Fitch patent is of the same general nature as the Amtsberg patent except that the Amtsberg is a wholly speed-responsive centrifugal wrench both for clutching and declutching, whereas the Fitch wrench is more torque responsive than it is speed responsive. Fitch uses centrifugally operated fly weights to cause the hammer and anvil jaws to engage, and the disengaging action is caused by cams separate from the clutch and anvil teeth. Since Fitch drives his hammer from his rotor through a cam connection, the rotor

does not stop upon impact and hence does not give up all of its kinetic energy to supplement that of the hammer. No impact tools embodying this invention were ever sold or manufactured by defendant, nor were any licenses ever granted thereunder.

In support of the contention that plaintiff's wrenches infringe the claims of the patents, defendant says plaintiff's "devices are a direct copy of many features of the Amtsberg patent and utilize the principles taught therein. They depart therefrom only in that they use a camming action independent of the impact clutch teeth (as taught by the Fitch patent in suit) instead of a spring to disengage the hammer and anvil. They employ an air motor, the rotor of which directly drives the hammer so that the mass of both hammer and rotor are employed in the impact. They employ centrifugal weights which operate light hammer dogs, so the heavy hammer does not move axially to cause axial vibration. The hammer dogs are arranged to exert a full non-camming blow upon the anvil jaws (flat face engagement). The motor stops completely at each impact and gives up its total energy and the total energy of the hammer, to the anvil."

It is elementary that the District Court's findings on infringement are a determination of fact requiring a balancing of credibility, persuasiveness and weight of evidence, and should not be disturbed unless clearly erroneous. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097; Hazeltine Research, Inc., v. Admiral Corp., 7 Cir., 183 F.2d 953, 954; and National Rejectors v. A. B. T. Mfg. Corp., 7 Cir., 184 F.2d 612, 615. Of course, in determining whether an accused device infringes a valid patent, resort must be had in the first instance to the words of the claim, but as we said in Flowers v. Austin-Western Co., 7 Cir., 149 F.2d 955, 958, mere application of claim phraseology is not alone enough to establish infringement, nor is similarity of result. There must be real identity of means, operation and result. See also Jogger Mfg. Corp. v. Roquemore, 7 Cir., 118 F.2d 867. Thus,

where a device is so far changed in principle that it achieves the same result by a different mode of operation, it is not an equivalent of the patented structure or an infringement of the claim even though it may fall within the literal words of the claim. Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 569, 18 S.Ct. 707, 42 L.Ed. 1136; Graver Tank & Mfg. Co. v. Linde Air Products, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097.

A speed-responsive wrench is one that declutches on stoppage of speed. A torque-responsive wrench declutches through cam means and does not require the speed of the hammer to drop to zero. In the instant case, in addition to colored charts, cut-away and disassembled models of wrenches, and high speed movies and still enlargements of the movies, there was expert testimony that defendant's wrench is speed responsive, its clutching operation is caused by centrifugal force, effected by a spring moving the dogs into an engaging position. The hammer and rotor are a single one-piece unit, operating always together with a start and stop action. Because of that fact, practically all of the momentum of the rotor is transmitted to the anvil upon impact, and upon impact the rotor comes to a complete stop and gives up all of its energy, and it is incapable of further rotation relative to the hammer until the dogs are retracted by the spring.

Plaintiff's wrench is torque responsive and the rotor drives the hammer by a cam. The cam and rotor are separated from the hammer and are capable of relative rotation with respect to the hammer, and the rotor and hammer do not rotate in unison; the cam serves as an automatic, non-stalling declutching means through which the motor torque is transmitted, and the cam drives the hammer by its non-rigid, multi-piece connection with flyweight lugs. In this declutched position the lugs are positioned at the outer portions of the driving cam and as the speed increases, the centrifugal force on the flyweights increases and when the rods register with their corresponding anvil slots, the lugs are rapidly projected downwardly into slots by the

948

pivotal action of the flyweights, and as the flyweights turn on their pivots, their lower weighted portions move outwardly, their lugs slide inwardly to the low point of the cam and the hammer is moved ahead of the cam, but this forward movement ceases prior to impact so that the hammer and cam are rotating at the same speed at the time of impact. The cam and rotor continue moving to declutch the rods during the impact; they do not stop with the hammer but continue on without stopping in their rotation relative to the hammer under the driving force of the motor, that is, the declutching from the anvil occurs during the impacting period and does not wait until after the termination of the impact.

It is true that the device as shown in defendant's patent and plaintiff's wrench accomplish the same result, *i. e.,* deliver a series of blows or impacts in tightening or releasing a nut or bolt, yet they differ in methods, operation and arrangement of parts which do not come within the range of equivalents. In this situation, we think the finding of the District Court that the claims in issue do not infringe is supported by the evidence and hence is not erroneous.

Affirmed.