Elbert C. LEACH, Plaintiff-Appellant,

v.

BADGER NORTHLAND, INC., and M–F Badger Corporation, Defendants-Appellees.

No. 16001.

United States Court of Appeals Seventh Circuit.

Oct. 9, 1967.

Arthur H. Seidel, Allan W. Leiser, Milwaukee, Wis., for appellant.

Elwin A. Andrus, Glenn O. Starke, Milwaukee, Wis., for appellees.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

The plaintiff-appellant, Elbert C. Leach, who is the present owner of the patent in suit, patent No. 2,580,306 (issued in 1951 on application made in 1945) brought this action for infringement against the defendants-appellees Badger Northland, Inc., and M-F Badger Corporation.

The District Court found the claims invalid and not infringed, and this appeal followed. The appellant is pursuing claims numbered 12, 15 and 16 [1] on the

1. "6. A silo unloader, for installation in a silo above the upper surface of the silage, comprising a vertically movable frame, means for restraining the frame against free rotation, a cutter journaled in the frame at the center of the silo for rotation in a substantially horizontal plane, blades on the cutter for loosening the silage at the upper surface of the latter and working the loosened silage in toward the center of the silo, a pick-up duct leading upwardly from the cutter at the center of the silo above the point where the blades leave the loosened silage, silage conditioning means beneath the duct separate from the blades of the cutter for agitating the silage loosened by the blades to facilitate its becoming airborne, and suction means associated with the duct for causing the loosened silage to be picked up in the duct for discharge laterally from the silo.

\* \* \* \* \*

"12. A silo unloader, for installation in a silo above the surface of the silage, comprising a vertically movable frame, means for lowering the frame in the silo, a cut-

ter journaled in the frame at the center of the silo for rotation relative to the frame in a substantially horizontal plane, blade means on the cutter for loosening the silage at the upper surface of the latter and for working the loosened silage in toward the center of the silo, an air duct leading upwardly from the cutter adjacent the center of the silo, and means associated with the duct for creating an upward flow of air therein of sufficient intensity to cause the loosened silage to be sucked up into the duct for discharge laterally from the silo.

\* \* \* \* \*

"15. A silo unloader according to claim 12, including agitators associated with the cutter and positioned immediately beneath the duct for directing the silage loosened by the blades into the duct.

"16. A silo unloader according to claim 12, including means for restraining the frame against rotation.

"17. A silo unloader, for installation in a silo above the upper surface of the silage, comprising a vertically movable frame, means for restraining the frame against

issue of infringement and claims numbered 6, 12, 15, 16 and 17 [1] on the issue of validity.

As the District Court found, silage, primarily chopped corn or grasses, is typically stored in silos without drying, as feed for animals, the silo being a cylindrical structure with a narrow vertical opening which can be used for removal of the steadily lowering top layer of the stored silage. Usually an adjacent ladder provides access.

To avoid spoilage by lengthy exposure to air, the topmost layer is periodically removed and used. The District Court described manual removal of this layer as the third most arduous daily task on a farm.

The silo unloaders involved in this case are intended to loosen the top layer of silage, bring it to the center and then discharge it from the silo.

The Leach unloader of the patent in suit has a frame of generally triangular cross-section which extends across the inside of the silo, is adjustable to the diameter of the silo, and is kept from rotating by two shoes, one of which engages a vertical guide rail inside the silo at one end of the frame, while another fits the silo door. The frame is supported by and moved vertically to follow the level of the silage by cables from the top of the silo. A second embodiment has a frame supported by three cables, which has three legs each with an antifriction roller to allow only limited rotation of the frame without the vertical rail described above.

A series of curved blades are mounted on a cutter arm which is attached to a rotatable portion of an air duct below the frame. This cutter arm rotates in the silo loosening the silage and bringing it to the center. Two agitators with fingers approximately even in length with the lower edge of the curved blades are adjacent to the air duct to which the cutter arm is attached. These are driven separately from the cutter. They fluff up the silage for pick-up.

A centrifugal fan in a casing is attached to the non-rotatable frame. A suction pick-up duct extends from the center of the fan to slightly above the silage at the center of the silo. A discharge chute leads from the fan casing to the silo door. The pick-up duct below the frame rotates. The fan and discharge chute are stationary.

The Leach unloader is a 100% suction device and will not operate in the absence of air.

The accused device has a non-rotatable frame supported by one cable from the top of the silo, not extending the entire diameter but adjustable to fit the silo, moving vertically to follow the silage level; a shoe connecting with the silo door to restrain rotation; a revolving cutter arm including an auger rotating about its axis, serving to cut, dislodge and move the silage to the center of the silo. As the cutter arm rotates, the auger in conjunction with its own housing moves the loose silage against the side wall of the housing to convey it longitudinally of the axis of the auger. Below the frame and part of the rotating portion of the unloader is a series of rotating blades which the defendants call "impeller" blades inside a housing with a kidney-shaped opening just over the silage level. The impeller housing is so positioned that the surface with the

---

free rotation, a cutter arm journaled in the frame at the center of the silo for rotation in a substantially horizontal plane, cutting means carried by the arm for loosening the silage at the upper surface of the latter and working the loosened silage in toward the center of the silo, a pick-up duct leading upwardly from the cutter arm at substantially the center of the silo above the point where the cutting means leaves the loosened silage, silage conditioning means beneath the duct sep-

arate from the cutting means for agitationg (sic) the silage loosened by the cutting means to facilitate its becoming air-borne, and suction means associated with the duct for causing the loosened and agitated silage to be picked up in the duct for discharge laterally from the silo."

It will be noted that claims 6 and 17 are almost identical, having only minor changes in wording, and that claims 15 and 16 depend on 12.

kidney-shaped opening is a continuation of the side wall of the auger housing so that the auger moves the silage laterally against the housing and forces it directly into the opening. There is a second reverse auger which moves silage back toward the center. On the auger shaft between the two auger flights and acting in conjunction with them are two kicker paddles to propel silage through the impeller housing opening to the rotating blades which convey the silage by impact to the exterior.

An earlier also accused device differed in that the arm had a digger in addition to an auger and led straight to, instead of beside, the casing opening. It had no agitators or kicker paddles.

From evidence of test data, motion pictures and visual demonstrations of the operation of plaintiff's and defendants' unloaders, the District Court found that defendants' method for picking up the silage, unlike the plaintiff's 100% suction device, is dependent primarily on mechanical principles. Our own study of the record and the exhibits leads us to the same result.

■ An item to be patentable must have not only utility but also novelty and must be unobvious to one skilled in the art. Akron Brass Co. v. Elkhart Brass Mfg. Co., Inc., 7 Cir., 1965, 353 F.2d 704, 706–707; Corn Products Co. v. Standard Brands, Inc., 7 Cir., 1966, 359 F.2d 739, 745.

■ It is axiomatic that substitution of one well known element for another in a combination is not patentable. Joyce v. Kahn, 7 Cir., 1938, 96 F.2d 877, nor is uniting old elements with no change in their respective functions, Senco Products, Inc. v. Fastener Corporation, 7 Cir., 1959, 269 F.2d 33; Goldman v. Bobins, 7 Cir., 1957, 245 F.2d 840, 843.

The Burgess Patent, No. 1,233,308, issued in 1917 when few farms were electrified, showed a silage unloader (driven by an engine outside the silo) with a nonrotating frame, capable of being raised or lowered in the silo, with rotatable disc cutter, having scrapers or blades to loosen silage and to carry it to a center hopper, with an endless bucket conveyer operating in a trough from a hole in the roof to the hopper, the trough also restraining rotation of the frame. Burgess disclosed all the elements in the frame and gathering means described in the claims here in issue except the agitators.

The Ronning Patent, No. 1,556,718, issued in 1925, disclosed a pneumatic conveyor for filling silos with a fan in a casing having a center inlet, a duct leading from below the casing to that inlet and a pair of picker wheels beneath the lower end of the duct to agitate the silage to be picked up in the duct by the suction of the fan, plus a discharge duct from the fan casing to the top of the silo. Thus, despite the fact that the means are used for loading from a wagon into a silo, Ronning disclosed most of the essential elements of the pick up and discharge means of the claims in issue. The plaintiff argues that it would not be feasible to combine the devices of Burgess and Ronning precisely as disclosed in the respective patents. We agree with the District Judge that the alterations which would be required in each would not make the combination unfeasible or require such substantial reconstruction as would be beyond those skilled in the art.

■ The presumption of validity arising from grant of a patent is weakened by pertinent prior art not before the patent office. A R Inc. v. Electro-Voice, Inc., 7 Cir., 1962, 311 F.2d 508, 512; Simmons Co. v. Hill-Rom Co., 7 Cir., 1965, 352 F.2d 886, 888. While Burgess was a file wrapper reference, Ronning was not before the patent office. In our opinion, the District Court properly found, contrary to plaintiff's contention, that Ronning was more pertinent than Rasor, No. 2,148,501, which the examiner did consider. Ronning deals with silage, Rasor with cotton, a lighter, fluffier material. Ronning discloses agitators directly below the inlet duct. Rasor has moving fingers outside the periphery of the duct. Ronning shows a vertical air duct connected to the center of a suction

fan as the patent air duct is connected to the patent fan. Rascr shows no fan or suction means.

■ The record supports the conclusions of the District Court: the claims in suit are invalid because their subject matter as a whole would have been obvious to one of ordinary skill in the pertinent art in the light of Burgess and Ronning.

The claims in suit were the subject of another action brought by this plaintiff in the District Court for the Western District of Wisconsin, Leach v. Rockwood & Co., 273 F.Supp. 779, wherein Judge Doyle also found them invalid as the subject matter was not unobvious in the light of the same prior art.

The plaintiff argues that the patent in suit described a pioneer invention providing a long-sought solution to an old problem, in itself a compelling indication of the patentable character of the invention. The District Judge found that the solution was not seriously sought in the past because prior to 1945 most farms lacked sufficient electrical power for operation of workable silo unloaders and produced insufficient income to warrant purchase of expensive equipment, but farmers did have access to sufficient low priced farm labor to perform this admittedly arduous task of unloading manually. The record shows ample support for his finding.

■■ To hold that the defendants' accused devices infringe, we must find identity of structure, operation and result. Universal Match Corp. v. New Castle Products, Inc., 7 Cir., 1962, 308 F.2d 842, 846; Elgen Mfg. Corp. v. Ventfabrics, 7 Cir., 1963, 314 F.2d 440, 443–444. Identity of result is not sufficient. Construction of claims must be viewed in the light of the specifications. Means other than those described in the specifications (or their equivalents) of an entirely different character do not infringe by bringing about the same results. Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 7 Cir., 1952, 194 F.2d 945. The patent in suit suggests no means other than suction. The Plaintiff's theory is that the defendants have merely improved on the patented device by the addition of mechanical conveying elements. The limitations of some of the claims of the patent in suit could be said to be met by some of the elements of the accused devices. For example, the auger flighting loosening and working silage toward the center might be included under the term "blades" as used in the patent claims, although the auger revolves around its own axis as well as within the silo unlike the scraper blades of the patent. However, apart from a number of structural differences, the accused unloader does not meet the limitations of the claims of the patent in suit in that it provides a different method for picking up the silage, lacking the essential element of a pick-up or air duct with suction means. The plaintiff would consider the impeller blades alone as suction means and the impeller housing as an air duct.

We agree with the District Judge that the "fan blades" (as plaintiff characterizes the impeller blades of the defendants' decide) without a casing, would be incapable of lifting the silage. The blades and housing together would be suction means. There would be no air duct. The defendants have constructed a device without a pick-up or air duct, which is instead capable of mechanical pick-up unlike (as indicated) the 100% suction device of the patent.

Defendants' unloader has no agitators associated with the cutter and positioned beneath the duct to direct loosened silage into the duct. The kicker paddles are beside not beneath the casing, even if we should accept (as we do not) the plaintiff's characterization of the casing as a duct. These paddles propel the silage into the casing. The projections in the patent disclosure fluff up the silage but do not propel it. The kicker paddles, as noted above, are not in the defendants' earlier model.

We are in accord with the District Court. Infringement is not present.

The judgment of the District Court is affirmed.

Affirmed.