**WARNER AND SWASEY COMPANY,**
**Plaintiff-Appellant,**

v.

**Edwin HELD, Jr., as Executor, etc., et al., and Cutting Tools, Inc., et al., Defendants-Appellees.**

**No. 17342.**

United States Court of Appeals
Seventh Circuit.

July 14, 1969.

Rehearing Denied Sept. 2, 1969.

J. William Freeman, Akron, Ohio, Eugene R. Sawall, Milwaukee, Wis., Freeman & Taylor, Akron, Ohio, for plaintiff-appellant.

Joseph P. House, Jr., Henry C. Fuller, Jr., Wheeler, Wheeler, House & Clemency, Milwaukee, Wis., for defendants-appellees.

Before DUFFY, Senior Circuit Judge, FAIRCHILD, Circuit Judge and BEAMER, District Judge.[1]

DUFFY, Senior Circuit Judge.

This is a patent infringement suit charging defendants with infringement of Novkov Patent No. 2,846,756 ('756) and Novkov Patent No. 2,964,833 ('833) each of which pertains to cutoff tools.

During the prosecution of the '756 patent, the Patent Examiner required a division between 1) the claims that were

---

1. Judge Beamer is sitting by designation from the Northern District of Indiana.

directed to the combination, and 2) those claims of the application which were directed to the insert bit per se. A divisional application was filed on May 7, 1958 which ultimately matured into United States Patent No. 2,964,833.

In 1951, Novkov and others formed Manchester Machine & Tool Company and operated this company as a "job shop" until 1953. Thereafter they developed their own line of proprietary items known as Manchester cutoff tooling. In 1964, the Warner and Swasey Company, plaintiff herein, acquired the entire assets of Manchester including title to the '756 and '833 patents.

At the trial, patent owners claimed the validity of said patents was based on the fact that all of the known prior art used a "blade-like" configuration to effectuate metal cutoff, while Novkov's invention related to the concept of employing a "bit-like" configuration for achieving the same result in what was claimed to be a much more effective manner.

The trial court noted certain disadvantages of the blade-like configuration, including problems of sharpening or grinding; also fishtailing and weakening by the necessity of grinding.

The District Court also noted that the cutoff tool invented by Novkov gained immediate industry acceptance and was commercially successful. The Court sustained the validity of the two patents. The trial court also held the invention is limited to a "full butt brazed tip, all carbide at the end" and held defendants did not infringe the patent claims.

There is here no cross appeal on the issue of validity of the patents. Hence, the issue of the validity of the patents in suit will not be further discussed except for reference to the claim of defendants that if the claims of Patent '833 are given the construction now contended for by the plaintiff, these claims are invalid, and that plaintiff is estopped to construe

elements C, F and J of its claims broadly enough to find response in the accused Sketch II bits.

Frequently during the trial, the question of infringement of Patent '833 was stated as "Does the accused bit as shown in Sketch II respond to the following elements of the claims of Patent '833? Reference is made to C, F and J, the details of which are as follows:

C ( [a] cutting tip having opposed top and bottom surfaces, opposed side surfaces and first and second end surfaces), with said first end surface of said tip being fused to said first end surface of said shank whereby said tip projects longitudinally of said shank.

\*    \*    \*    \*    \*    \*

F [S]aid top and bottom surfaces of said tip and shank being respectively disposed in substantially coplanar relationship with each other;

J [S]aid bottom surfaces of said shank and said tip being V-shaped with the apex of said V-shaped bottom surfaces being disposed substantially centrally between the opposed side portions thereof.

Due to frequent reference to plaintiff's Sketch II, we shall include a reproduction of same herewith as a part of our opinion. It should be noted that only the carbide (the shaded part) is the "cutting tip". The balance of the tool is the "shank." (See Sketch II, page 5)

Although the plaintiff and the trial court mentioned the term "geometry" of the cutting tool, it was stipulated that the geometry of the bit was not mentioned in the patent. In fact, the trial court found novelty only in the "full butt brazed tip, all carbide at the end."

Considering now the question of infringement, the finding of the trial court that Claim 1 does not read upon the Sketch II device should be sustained unless clearly erroneous. Graver Tank and Mfg. Co. v. Linde Air Products Co.,

336 U.S. 271, 274, 69 S.Ct. 535, 93 L.Ed. 672; United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

When the application for the plaintiff's Patents '756 and '833 were being prosecuted, the Patent Office frequently cited and relied on Anthony Patent No. 2,416,975 as an anticipation of the claims which Novkov was seeking. In response to a Patent Office rejection, plaintiff inserted elements F and J in the claims and thus narrowed them.

Plaintiff argues that it makes no difference whether the tool has a full butt brazed tip, all carbide at the end or whether it has a recessed wafer carbide tip and points out that either produces equivalent results. Plaintiff also argues

DEFENDANTS' ACCUSED TOOL BIT
AND PLAINTIFF'S SKETCH II

that the differences urged by defendant are only "semantic" differences. In other words, another instance of tweedledum and tweedledee. We disagree. We think pertinent and appropriate the language used by this Court in Lewis v. Avco Mfg. Corp., 7 Cir., 1956, 228 F.2d 919, 925, which opinion was written by Judge Major. "If the difference between tweedledum and tweedledee represented the margin between the prior art and the patent as allowed, the patentee would not be heard to assert that such difference was of no consequence on the issue of infringement." See also, Jacwil Mfgrs. v. Batesville Casket Co., Inc., 7 Cir., 1962, 311 F.2d 38, 43.

It is, of course, fundamental that a patentee is not permitted to capture that which he disclaims in order to obtain the patent. The basis of a file wrapper estoppel is that a patentee cannot be allowed to take an inconsistent po-

**232**

sition in the courts from that which he took in the Patent Office.

As was pointed out by the trial judge, the word "tip" as used in the claims of the patent is narrowed by the modifying word "cutting." A cutting tip is less than the whole end of the tool. The forward extension of the steel shank which supports the tip does not do any cutting. The cutting tip does not include the supporting steel extension of the shank.

There was some discussion in the briefs as to the application of the doctrine of equivalents. Plaintiff seems to rely on the end result obtained. It has been said "If the same results are obtained by a construction which is not an equivalent of the patented device the accused structure does not infringe." Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 96 F.Supp. 70, 74, aff. 194 F.2d 945 (7 Cir., 1952). We have noted that there must be real identity of means, operations and result. North Star Ice Equipment Co. v. Akshun Mfg. Co., 301 F.2d 882 (7 Cir., 1962). Hence, plaintiff's reliance on the doctrine of equivalents is not applicable in this case.

We hold that the trial court was correct in finding the claims of '833 patent are limited to a "full butt brazed tip, all carbide at the end."

We also are of the view that Sketch II bit has a wafer insert or recessed tip which is not within the limits of elements C F and J of the claims of Patent '833.

■ We conclude that the trial court was correct in finding that there was neither a direct infringement nor contributing infringement of Patent '756. The trial court cited Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592. In this connection, we refer to our opinion in TSC Industries, Inc. v. International Harvester Co., 7 Cir., 406 F.2d 53.

We hold the findings of the District Court on the question of infringement were not clearly erroneous. Further, that the accused Sketch II bit with a wafer insert or recessed tip is not within the limitations of C F and J of the claims of Patent No. 2,964,833.

■ We further hold that Patent No. 2,864,756 was not contributorily infringed by defendant's device.

The judgment of the District Court is Affirmed.