**SHERMAN CAR WASH EQUIPMENT COMPANY, Plaintiff-Appellee,**

v.

**GRAND CAR WASH, INC., Defendant-Appellant.**

**No. 17910.**

United States Court of Appeals, Seventh Circuit.

July 15, 1970.

Sheldon W. Witcoff, James V. Callahan, Molinare, Allegretti, Newitt & Witcoff, Bair, Freeman & Molinare, Chicago, Ill., for defendant-appellant.

Ernest Cheslow, Chicago, Ill., Joel S. Goldhammer, Arthur H. Seidel, Seidel, Gonda & Goldhammer, Philadelphia, Pa., for plaintiff-appellee.

Before KILEY and CUMMINGS, Circuit Judges, and DOYLE, District Judge.[1]

KILEY, Circuit Judge.

Defendant Grand Car Wash, Inc. (Grand) appeals from a judgment for plaintiff Sherman Car Wash Equipment Company (Sherman) that Grand's Lark device infringed the Beer Patent No. 3,310,824 in suit. We affirm.

The Beer patent, assigned to Sherman by Beer, is a car washing device entitled "Vehicle Washer." The device is a "wraparound" brushing unit through two of which, placed opposite to each other, moving cars are washed by the rotating brushes. The brushes "wrap around" the car in the sense that in operation they wash the complete front, sides and rear of the car. The accused device[2] similarly washes moving cars.

The Beer device and the accused device are concededly substantially the same in structure. The similarity will appear from a comparison of both, illustrated here:

## FIGURE 4 OF BEER PATENT (PX 1).

Beer Patent Specification, Claims and Representations to Patent Office Limit Claims to Cylinder (64) Plus Spring (68) to Move Brush Support.

[A2325]

---

1. District Judge Doyle of the Western District of Wisconsin is sitting by designation.

2. Sold to Grand by Lark Manufacturing Company of Columbus, Ohio, which assumed defense of this suit and has agreed to indemnify Grand against any judgment against it.

## DEFENDANT'S APPARATUS (PX 51).

Defendant's Apparatus Has Only Cylinder (64)
to Move Brush Support.

[A2324]

---

The differences between the two relied upon by Grand to avoid infringement are the omission of spring 48 (C in illustration PX 1) in the accused device and the nonidentity between the corresponding members 34 (A in illustrations) in each.

In each device, as the moving car pushes against a brush, the three sections move clockwise on No. 32, against the counterforce of cylinder 70 designed to keep the brush against the moving car. The brush hanger begins its pivot as the front corner of the car pushes against the brush and the hydraulic-pneumatic cylinder 64 (B in illustration) causes the knuckling, or retraction, of the brush, against the bias of the spring 68, to wash the side of the car. And the forced countermovement of 64(B)—a double-acting cylinder—plus the cooperation of spring 68, unknuckles the brush by extending the brush hanger to the rear of the car, which the brush washes by revolving counterclockwise.

The single picture below will tell more than the paragraph above, or a thousand words, how the two devices operate in general.

[A2323]

The nub of the district court's decision, after a trial on the infringement issue only,[3] is in its finding that the double-acting cylinder of the accused device was a "pneumatic spring," was equivalent to the combined double-acting cylinder and spring in the Beer device, and infringed the Beer patent.[4]

▆ Grand concedes that there is identity of operation and result, but contends the finding of equivalency is clearly erroneous because there is no identity of structure since the accused device has no mechanical spring. We see no merit in the contention. The district court found that the double-acting cylinder 64 in the accused device was a "spring means" covered by that term used in claim 1 of the Beer patent and a "means coupled between" the brush and support hangers under claim 2; that the cylinder replaced in the accused device the combination double-acting cylinder and spring in the Beer device; and that it constantly biased the brush hanger toward an extended position, thus performing the same function as the combination means in the Beer patent.

There is testimony by an officer of Grand that when the accused device was delivered to Grand a spring was attached between the outer and middle sections in a place substantially at the location of the spring in the Beer device; and that he removed the spring and the unit operated satisfactorily. Plaintiff's expert Fiddler testified that he found the "spring means" in the accused device in the "fluid" in the head end of the cylinder. The witness found no mechanical coil spring on the accused device, but testified that "there is the equivalent function provided" by the double-acting cylinder connecting the brush and support hangers, as in the patent in suit. He said on cross-examination that defendant's cylinder is a "pneumatic spring," and in the patent in suit a combination of pneumatic-hydraulic, and that both are double-acting; and while the words differ there is no real difference between them. His opinion was that the double-acting cylinder and spring was equivalent of the double-acting cylinder alone. He also testified, after comparing exhibits, that the double-acting cylinder of the accused device was a "means coupled between said sections for biasing said one section to its extended position" which is the description of claim 2 of the patent in suit. There was no contrary expert testimony.

We think there is ample support for the finding that the spring means in the Beer and accused devices were equivalent. The finding is therefore not erroneous.

Grand also claims non-identity of structure with respect to claim 4's definition relating to "an actuator responsive to the rotary position of said shaft."

3. Lark has a sublicense under the Beer patent in suit and the parties stipulated at trial that the sublicense estops Lark from contesting validity of the patent and that it is bound by the judgment. The district court thereupon dismissed Grand's counterclaim alleging invalidity.

4. Independent claims 1, 2 and 4 of the patent in suit are at issue on appeal. The balance of the claims are concededly infringed if 1, 2 and 4 are, since they are dependent on 1, 2 and 4.

This actuator refers to a device for opening and closing the valve admitting air or fluid into the double-acting cylinder in each patent, to move the piston, in the cylinder, for retraction or extension of the brush hanger. The shaft is the one common to the two support hangers. Grand claims that when the shaft rotates carrying both the dependent support hander and the brush hanger, the accused device uses a limit switch responsive to a "single predetermined position" which is not responsive "at all times" to the rotary position of the shaft as stated in claim 4.

■ There is testimony that each device has the valve for the identical purpose of admitting fluid to force the piston or the cylinder to knuckle or unknuckle the brush hanger. And, in the accused device the top arm of the rotating main hanger "contacts this roller" to move the limit switch, or actuator, just as the support shaft in the Beer device in rotating moves the cam, on top of the shaft, which moves the acutator. Expert Fiddler's testimony explains the details of this particular operation persuasively to show the equivalency between the two devices. This is ample to support the court's finding that the accused device is covered by claim 4.

■ There is no merit in Grand's argument that the court erred in not interpreting claims 1, 2 and 4 in the light of the specifications. It is true that specifications should be considered to have the function of teaching the public what the claims define, Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 214, 61 S.Ct. 235, 85 L.Ed.2d 132 (1940), and the claims are always to be read or interpreted in the light of the

specifications. Id. at 217, 61 S.Ct. 235; Leach v. Badger Northland, Inc., 385 F.2d 193, 197 (7th Cir. 1967).

■ The record does not show that the district court did not consider the specifications with the claims. The court's decision implies that the court did so and found that the broad claims of the spring means were not limited by the specifications to mechanical means.[5] We see no error in this finding.

■ Grand further argues that there can be no application of the doctrine of equivalents where, as here, the doctrine of file wrapper estoppel applies. It contends that Beer amended his application before the Patent Office to avoid the Kullen patent, in the prior art, and that Beer seeks to expand the claims as issued to include the element eliminated by the amendment. This contention presents factual questions as to what happened in the Patent Office. Yardley Created Products Co. v. Clopay Corp., 324 F.2d 932 (7th Cir. 1963).

Grand's argument is substantially that Beer overcame the Kullen prior art by arguing that Kullen had no biasing means and cannot now assert that the accused device infringes because that device, like Kullen, has no biasing means. Grand's argument is specious. This argument may be placed, as follows, in a somewhat syllogistic form:

Beer's patent issued over Kullen because Kullen had no spring means.

But Grand has no spring means.

Therefore Grand cannot infringe the Beer patent.

The defect in the minor premise renders the syllogism invalid. The defect is the unwarranted assumption that the ac-

5. The adjective "mechanical" does not modify "spring" in the claims or specifications, and on page 10 of the specifications it is said that "spring 68 may be referred to as a means coupled between the sections for biasing one section to its extended position"; also that "cylinder 64 and its piston rod 66 may be referred to . . . as a means connected to the sections for opposing the bias of spring 68" and that "the present invention may be embodied in other specific forms without departing from the spirit or . essential attributes thereof," and refers to the prior specifications as indicating the scope of the invention.

cused device has no spring means. We have decided hereinabove that the court properly found the double-acting cylinder of the accused device was a spring means.[6]

At the trial the district court had an opportunity to hear inventor Beer explain the operation of his device, saw a movie of the device in operation, heard plaintiff's expert Fiddler identify member by member the various parts of the Beer device and the accused device and his testimony of the identity, and heard Grand's officer Kamysez testify that when the accused device was delivered to Grand it had a mechanical spring which he removed. There was no testimony offered by the defendant.

For all the reasons given above, the finding of infringement is not clearly erroneous, and the judgment is affirmed.

6. Furthermore, it is evident that Kullen's purpose was to wash railroad cars which, having no front grill and rear like motor cars, had no reason to have any means for extending the brushes or for retracting the brushes which were locked in place as the cars moved between them.