**BEAVER CLOTH CUTTING MACHINES, INC., Plaintiff-Appellee,**

v.

**H. MAIMIN CO., Inc., Defendant-Appellant.**

**No. 276, Docket 29141.**

United States Court of Appeals
Second Circuit.

Argued Jan. 6, 1965.

Decided March 31, 1965.

See, also, D.C., 37 F.R.D. 47.

Maurice B. Stiefel, New York City (Myron Cohen, Robert W. Fiddler, Hubbell, Cohen, Stiefel & Fiddler, New York City, N. Y., on the brief), for plaintiff-appellee.

Merton S. Neill, New York City (James G. Foley, Harold A. Traver, Pennie, Edmonds, Morton, Taylor & Adams, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and WATERMAN AND HAYS, Circuit Judges.

LUMBARD, Chief Judge:

 H. Maimin Co. appeals from a judgment of the Southern District of New York, which held that it had infringed a patent owned by the plaintiff, Beaver Cloth Cutting Machines, Inc. Maimin was enjoined from further infringement and directed to account for past infringement and pay reasonable attorney fees. We find that Beaver's patent is invalid for lack of invention, and we therefore reverse the judgment of the district court.

The subject of the Beaver patent is an improved automatic sharpener for what is known as a straight-knife cloth cutting machine, a machine used in the garment industry to cut stacks of material to pattern. The frame of the machine is in the shape of a square C; it consists of a flat base, a vertical post, and an electric motor mounted at the top of the post. The cutting is done by a narrow reciprocating blade, eight inches or so in length, suspended parallel to the vertical post.

Straight-knife cloth cutting machines have been used in the garment industry since early in this century; Maimin received a patent on one such machine in 1911. In 1937 Maimin added to the basic cutting machine an automatic sharpener. Two small grinding wheels—one for each side of the blade—were attached to short horizontal arms so that they could be swung into contact with the blade for sharpening and then away again to permit normal operation. Coil springs pressed the wheels against the blade, and

a turning device disengaged them against the springs' pressure. The whole mechanism was mounted on a carriage which could be moved up and down the vertical post.

The immediate antecedents of the present controversy date from 1947, when Maimin brought out its Model C machine. It found that the grinding wheels on the new model tended to chatter against the blade and that this caused the blade to be sharpened unevenly. To stop this, Maimin began in 1948 to install "snubbers" —spring-loaded washers which pressed against the sharpener arms at the point where they pivoted. It was hoped that this drag would minimize the chatter.

Maimin discontinued use of the snubbers after about a year. Whether they had not been successful or simply were rendered unnecessary by use of a stronger spring is a matter of dispute. In any event, Maimin drops out of the story for several years.

Meanwhile, Beaver had begun distributing a straight-knife cloth cutting machine in 1948. Almost from the start Beaver received complaints that the blade was not being sharpened evenly. As with Maimin's Model C machine, the cause was chatter, but Beaver seems at first not to have realized this.

After several unsuccessful attempts to solve the problem, Beaver called in Harry Fleisher in early 1949. Fleisher worked on the problem for a number of months. Finally, some time in the late summer, he discovered that the grinding wheels were chattering against the blade. Within a week he had a working model of the device which he subsequently patented and assigned to Beaver.

Both the Fleisher snubber and the first Maimin snubber were intended to restrict the pivotal movement of the sharpener arms by exerting a frictional drag; Fleisher employed a pivoted plate with two extensions which, when the plate was rocked forward, bore down on the two arms. The basic difference between the two snubbers lay in the amount and timing of the drag. The drag exerted by the first Maimin snubber was continuous and not so strong as to prevent the grinding wheels from being swung against and away from the blade (though, hopefully, strong enough to minimize the chatter). Fleisher's snubber, on the other hand, held the arms more or less stationary; it was applied only after the grinder wheels had settled on the blade under the tension of the springs, and it was released before they were swung away.

Fleisher applied for a patent in 1950. It was issued to him in 1953, and he assigned it to Beaver.

Maimin again turned its attention to the chatter problem in 1955, when it introduced its Model H machine. For a time it experimented with its own earlier snubber and then with other means of exerting a continuous drag on the sharpener arms. In 1956, however, it began using a releasable snubber similar to Beaver's. The drag was exerted by two small bars which bore on the top of the sharpener arms and was applied only while the grinding wheels were in contact with the blade.

Beaver contends that Maimin's new, releasable snubber infringed the Fleisher patent. Maimin responds that Fleisher's improvement was not patentable and that, in any event, there was no infringement since the Model H snubber, like the Model C snubber, exerted only a light drag on the sharpener arms; it was made releasable only to reduce the strain on the pin which turned the arms.

We do not think that Fleisher's improvement was patentable.[1] The Fleisher snubber must be judged with reference to Maimin's Model C snubber, which preceded it. Although the Model C snub-

---

1. Since this disposes of the appeal, we do not consider whether the quantitative difference in the drag exerted by the Fleish-

er and Model H snubbers would save the latter from being guilty of infringement.

ber was found by the district court not to have been successful, it did establish in the prior art the ideas that uneven sharpening may be caused by chatter and that frictional drag may be a solution to the problem. Measured against this benchmark, Fleisher's achievement—a snubber which was releasable and therefore allowed use of greater drag—was not an invention.

Beaver seeks to demonstrate the improvement's worth by pointing to its commercial success and to Maimin's failure independently to solve the problem. Neither commercial success nor a long-standing problem guarantees patentability, however, Gentzel v. Manning, Maxwell & Moore, 230 F.2d 341, 345 (2 Cir.), cert. denied, 352 U.S. 840, 77 S.Ct. 63, 1 L.Ed.2d 57 (1956); Jungersen v. Baden, 166 F.2d 807 (2 Cir. 1948), aff'd sub nom. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235 (1949), and these factors are particularly unpersuasive in this case. Since Beaver sold cutting machines, not improved sharpeners, the commercial success of any one part of the machines can only be inferred. Beaver did sell a considerable number of snubber-equipped machines. But it had had at least some success even prior to addition of the snubber, and Maimin continued to outsell Beaver even during the years when Beaver machines had snubbers and Maimin machines had none, releasable or otherwise. The most that can be said is that Fleisher's improvement gave Beaver an additional selling point, which presumably accounted for an undetermined number of Beaver's sales.

Nor does the record portray a determined but unsuccessful effort by those skilled in the art to develop a satisfactory snubber. There is no evidence that anyone was troubled by chatter prior to late 1947. Maimin then appears to have added snubbers to its Model C machine almost immediately, and, while they may have been unsatisfactory, Maimin apparently made no attempt to improve on them until 1955. Development of the Beaver snubber took until the latter part of 1949, but almost all of the intervening time was used in locating the problem; Fleisher had a working model within a week after he found that chatter was the cause of the uneven sharpening.

The judgment of the district court is reversed and the complaint is dismissed.