**KOPPERS COMPANY, Inc., Plaintiff, Appellant,**

v.

**FOSTER GRANT CO., Inc., Defendant, Appellee.**

**No. 6971.**

United States Court of Appeals
First Circuit.

June 6, 1968.

Melvin R. Jenney, Boston, Mass., with whom Wayne L. Benedict, William L. Mathis, Washington, D. C., Kenway, Jenney & Hildreth, Boston, Mass., and Burns, Doane, Benedict, Swecker & Mathis, Washington, D. C., were on the brief, for appellant.

Malvin R. Mandelbaum, New York City, with whom Harold M. Willcox, Boston, Mass., Theodore S. Kenyon, James H. Callahan, New York City, Leroy G. Sinn, Leominster, Mass., and Kenyon & Kenyon, New York City, were on the brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an appeal from a decision of the district court holding Grim Patent No. 2,673,194, issued March 23, 1954, invalid for want of invention. The patent is for a formula or process for polym-

erizing monomers[1] which, concededly, achieved great commercial success in a field crowded with method, but none of which had afforded practical, large-scale production. Grim produced polymer beads of consistent quality, of high molecular weight and of assured clarity, by use of a relatively low ratio of processing water, a combination which even defendant's expert, one DeBell, conceded was "indeed * * * a contribution."[2] The question is whether the district court's finding, 269 F.Supp. 342, that Grim was obvious in the light of the prior art was supportable.

 As is not unusual in patent cases, both parties are guilty of considerable over-claiming. Plaintiff-appellant's insistence that Grim's achievement included the clarity of the beads is in no way reflected in the patent's introductory recitation, a portion of patents not customarily devoted to modesty or concealment. The only mention of clarity of beads is an oblique reference to the fact that parties wishing such may take a certain step. This was not indicated to be invention, and on the record it was not. On the other hand, with even greater emphasis throughout its brief, defendant maintains that Grim is not to be credited for its accomplishments of high molecular weight using a relatively small proportion of water because they were not mentioned in the claims, and "the claims alone * * * are the measure of the invention."[3] Such a contention is far from helpful. Defendant overlooks the settled principle that claims and specifications are to be read together, United States v. Adams, 1966, 383 U.S. 39, 48–49, 86 S.Ct. 708, 15 L.Ed.2d 572, and confuses the mechanical measure of the invention and its teaching. Applying defendant literally, Grim could not even be the contribution which its witness DeBell conceded it to be, because the claims, being purely mechanically descriptive, did not mention accomplishments at all. Yet it must be that marked improvement in result, while not a primary consideration, is to be viewed "[a]s indicia of obviousness or nonobviousness." Graham v. John Deere Co., 1966, 383 U.S. 1, 18, 86 S.Ct. 684, 15 L.Ed.2d 545. Grim's accomplishments are not "irrelevant on this appeal." (n. 3, supra.) On the other hand, of course, they cannot alone save the patent. Hanovia Chemical & Mfg. Co. v. David Buttrick Co., 1 Cir., 1942, 127 F.2d 888, 894.

Coming to the merits, this is a case where we believe no useful purpose would be served in discussing the prior art in detail. We agree with the plaintiff that, fundamentally, the appeal presents a question of law, and we believe that the question can be stated in the form of a principle. This principle is pointed up by certain conclusions advanced by defendant's expert DeBell in cross-examination after he had discussed the prior art in detail.

"I feel that this group of patents is a complete anticipation of Grim * * * As I look at the Grim claim, it comes down to saying that of all these things which are well-known, .05 to .0005 is this invention.[4]

---

1. We will not detail the function which is set forth in the district court opinion, together with the claims. 269 F.Supp. 342.

2. DeBell: "Now, all through the whole group of these [instances of prior art] is the constant warning that any system to be successful has to be experimented with to find the preferable combination using these taught expedients and using them in the direction which the prior art tells.
 In continuation of the answer to your question—I hope this is related to it—I feel that Grim made a very painstaking compilation, very fine compilation of the teachings of all these people and he put a great many numbers in which would be helpful.
 XQ. You think Grim made a contribution. A. Indeed I do."

3. Defendant continues, "Not one of these features is recited in any one of the claims in suit. Whether or not they are obtained, as plaintiff argues, is irrelevant on this appeal since they have not been carried into the claims."

4. See n. 6, infra.

"XQ. Then your testimony is that you must combine the teachings of these ten items in order to anticipate Grim? A. I would expect that you could take any two or three of them and get, take those teachings and have Grim and I would expect by experimentation you would inevitably be led to that.

"XQ. By experimentation you mean you would be led to it? A. By trying the experiments which are shown, which are indicated by the prior art and the procedures and the very careful—there is much experimentation in the prior art * * *."

The question is whether in speaking of inevitability DeBell was referring to the type of experimentation that comes from mankind's compulsion to progress,[5] or whether it was experimentation taught by, or within the scope of, the prior art. Certain of DeBell's testimony, standing alone, notably his concession that there were "too many references * * * [t]he trouble would be to discriminate between them," may suggest that he was not talking in the latter sense. Viewing his testimony as a whole, however, we think the court was entitled to find that he was talking in that sense, and further to find that DeBell was warranted in reaching such a conclusion. We say this in spite of the fact that De-Bell's "expectation" that "any two or three" of the ten references he had indicated as the "best prior art against * * * Grim" suggested experimentation that would have led to Grim seems a bit cavalier. Some of the ten seem so wide of the mark that even collectively they indicate little. As to others, however, we agree with the district court that DeBell's general conclusion is fully supportable; in fact, as a permissible generalization it is not even rebutted.

■ On a review of the record we are satisfied of two significant matters. The first is that there was no novelty in any portion of Grim's basic method, viewed as a matter of principle.[6] The second is that Grim discovered no new individual component. It is true, with respect to the latter, that many combinations had been used. We may accept the statement in plaintiff's brief,

"The invention involves the use of a combination of materials, each of which materials has been associated in one way or another with polymerization processes of the prior art generally described above, but no single prior art reference describes the particular combination set forth in the patent."

Nevertheless, to grant a patent to the first person who finds the exact combination when experimenting within a known field could give too much force to the patent laws. In this situation, although, within limits, a question of law, the determination whether a discovery of a new combination is or is not obvious must be a question of fact. The plaintiff has failed to persuade us that the district court employed a wrong rule, or exceeded proper limits.

Affirmed.

5. "The need had long existed; competent investigators had tried to fill it; they had hit the target but not the bull's eye; the art accepted and practiced the disclosure with success. In retrospect *it now seems inevitable;* perhaps it was in time. Chemists were probably bound in the end to learn how to electroplate chromium; it was another species of an art well known. But if this is to be the test, there will be few inventions, or none." United Chromium, Inc. v. International Silver Co., 2 Cir. 1932, 60 F.2d 913, 916. (L. Hand, J.). (Emphasis supplied.)

6. In this respect we find the Collins Patent, No. 2,388,601 of particular significance. We further note, with reference to the above quoted testimony of DeBell as to the ".05 to .0005" (an indication of the amount of "surfactant" to be used) being claimed as the improvement, that the Lewis et al. book on Industrial Chemistry of Colloidal and Amorphous Materials had already revealed the ability of certain surfactants to stabilize suspensions, and had indicated that there was not only a minimum concentration at which the surfactant was operative, but also a very sharp maximum. Thus, in applying this particular principle, Grim's only contribution was precision.