BARTELT ENGINEERING CO., Inc.,
Plaintiff,

v.

PNEUMATIC SCALE CORPORATION,
Defendant.

Civ. A. No. 66–106–J.

United States District Court
D. Massachusetts.

April 15, 1969.

Cedric W. Porter, Boston, Mass., Edward B. Holt, Chicago, Ill., for plaintiff.

Richard F. Walker, Roberts, Cushman & Grover, Edmund Burke, Hale & Dorr, Boston, Mass., for defendant.

OPINION

JULIAN, District Judge.

This is an action in which plaintiff, Bartelt Engineering Company, Inc., a

**650**

Delaware corporation, alleges the defendant, Pneumatic Scale Corporation, a Massachusetts corporation, has infringed claim 16 of United States Patent No. 2,649,674 entitled "Packaging Machine," ("Bartelt patent"), issued jointly to Harold L. Bartelt and his brother, Donald E. Bartelt, on an application of Harold L. Bartelt, filed June 13, 1949.

*Findings of Fact*

Until February 8, 1960, plaintiff's predecessor in business, Bartelt Engineering Company, an Illinois corporation, operated as licensee under the Bartelt patent. On February 8, 1960, plaintiff was organized as a wholly owned subsidiary of Reigel Paper Corporation, a Delaware corporation, and became the successor in business of the Illinois corporation. On the same date, the Bartelt patent was assigned to plaintiff.

The machines alleged to infringe the patent in suit were manufactured in Canada by defendant's wholly owned subsidiary, Delamere & Williams Co., Ltd., a Canadian corporation, and were sold by defendant to General Foods Corporation. The accused machines (hereinafter also referred to as the Kool-Aid machines) were delivered to General Foods in Chicago, Illinois, and have been used to package a drink powder known as Kool-Aid.

In its complaint the plaintiff had also charged infringement against the packaging machines sold by or for the defendant to R. T. French Company and to Quaker Oats Company. At the conclusion of the trial, however, the plaintiff in open court withdrew its charges against these machines.

Subsequently, on June 15, 1967, a consent interlocutory judgment was entered in which it was adjudged:

"1. Plaintiff is the owner of said United States Patent No. 2,649,674 [the patent in suit].

2. Nothing is hereby adjudicated in respect to the validity of Plaintiff's said patent.

3. The claims of Plaintiff's said patent, if valid, are not infringed by the manufacture, use or sale of the machines sold to R. T. French Company and Quaker Oats Company in the form represented by Defendant as being shown in Defendant's Exhibits AE and AF in evidence herein.

4. In respect to said French and Quaker Oats machines, the Complaint herein is dismissed with prejudice.

5. The foregoing is without prejudice to Plaintiff's charge of infringement by other machines in issue in this action.

6. All issues relating to possible awards to Defendant of costs and attorney's fees hereunder are reserved by the Court for future action."

The Bartelt patent may be described in general terms as relating to a machine for making open-ended pouches or bags from a roll of flexible material, commonly known as a web, and filling the bags with a product to be packaged. The open end of the filled bag is then closed.

The web is unwound from the supply roll and drawn along a horizontal path. As the web moves along this path, it is folded longitudinally with the fold at the bottom and with the two halves of the strip upright and face to face. After folding, the two halves are sealed together at spaced intervals, that is, vertical seals are made to form a row of connected bags, and, eventually, the folded web is cut down the center of each seal to separate the bags. In order to form the seals, either the web is made of a heat-sealable thermoplastic material or the inner side of the web is coated with such a material so that the seals may be made by the application of heat and pressure. A measuring and dispensing mechanism deposits a measured amount of product in each bag. This mechanism may be any one of a number of types depending upon the particular product being packaged. Finally, the top of each

bag is closed and the bag is removed from the machine. Usually, the top is closed by a horizontal heat seal but other forms of closing, such as folding, may be used.

The patent contains 16 claims. As originally filed on June 13, 1949, the Bartelt application contained 21 claims. From that date until the issuance of the patent, more than four years later on August 25, 1953, additional claims were filed from time to time by amendments. The last such additional claim, namely, claim 31, was filed on January 16, 1953. Through cancellations and rejections the number of claims was ultimately reduced to 16. Claim 31 in the application, as amended, became claim 16 of the patent. This is the claim that the plaintiff contends has been infringed by the defendant's accused machines. The text of claim 16 is set out in full in the margin.[1]

The defendant contends that claim 16 is invalid for lack of invention over prior art and for obviousness, and in any event denies infringement.

The patentee was not the first to devise a horizontal packaging machine. In fact, the prior art as exemplified by the prior art patents included in Exhibit N, and extending back to 1921, shows horizontal machines of both the continuous-motion and intermittent-motion types. A continuous-motion machine is one where the various mechanisms for folding, sealing, filling and cutting operate as the web and bags move along the horizontal path without stopping. One example of such a continuous-motion machine is defendant's Robinson Patent No. 2,272,251, granted in 1942. Accused machines are continuous-motion ma-

chines. An intermittent-motion machine is one where the web and bags advance step by step and stop, that is, remain at "dwell," while the various mechanisms operate on them. An example of an intermittent machine is defendant's Howard Patent No. 2,269,533, also granted in 1942.

The stop-and-go action of the intermittent machines of necessity results in relatively slow performance and low output in contrast to the potential speed of the continuous machines such as defendant's Kool Aid machines in which the work is moved continuously through the machine with the operations performed thereon "on the fly."

The machine disclosed by the Bartelt patent is an intermittent-motion packaging machine which converts strip material, called the web, into a row of bags connected at their adjacent edges and intermittently advances the bags step by step edgewise along a predetermined path to bring the leading bag to a position where it is received and firmly gripped by a conveyor before it is cut off, and is then advanced to a position where it comes to a stop, and while stopped it is cut off from the succeeding bag by a cutting device. Immediately after cut-off, the conveyor separates the gripped bag from the next succeeding bag and advances it step by step, intermittently, along the predetermined path to a filling mechanism which deposits into the gripped bag the material to be packaged.

Each of the first fifteen claims of the Bartelt patent explicitly describes the forward movement of the bags as step-by-step, or intermittent. The specifica-

1. "16. A packaging machine having, in combination, means for converting strip material into a row of bags connected at their adjacent edges and for advancing the bags edgewise along a predetermined path to present the leading bag to a gripping position, means operable after said leading bag has reached said gripping position to separate such bag from said row, a conveyor disposed beyond the end of said path operable to receive and grip the leading bag before cut-off thereof,

mechanism for advancing said conveyor to carry the gripped bag along an extension of said path, a filling mechanism for depositing material in a bag supported by said conveyor, and mechanism operable in timed relation to the advance of the conveyor for opening a supported bag thereon and delivering material from said filling mechanism into the bag."

This claim does not in any way indicate that the open end of the filled bag is closed by the machine.

tions and drawings likewise describe a machine that is designed and intended to operate in intermittent forward movements.

For example, in column 3, lines 30 through 37 of the patent appears the following description:

"Before being cut off from the leading end of the folded strip, the bag is delivered to a transfer station 26 where it is picked up by a conveyor 27 by which its step-by-step advance is continued to present the bag to one or more filling stations 28 (Figs. 1, 15) at which the bag is opened and measured quantities of the articles 12 are dropped therein."

Again, in column 6, line 74, to column 7, line 5:

"In each advance of the folded strip, the leading end portion thereof is moved past the cut-off position and onto the secondary conveyor 27 above referred to (Figs. 1 and 12) which grips the bag prior to cut-off and then advances the bag step-by-step to the filling and final sealing stations 28 and 30."

Claim 16 makes no express mention of step-by-step or intermittent motion. It makes no mention of continuous motion. The plaintiff makes this omission the basis for claiming that claim 16 covers continuous machines as well as intermittent machines.

It is quite clear, however, when read in the light of the specifications, the drawings, and the history of the application as it appears in the file wrapper (Exh. 66), that claim 16 relates to an intermittent machine and that it does not relate to a continuous-motion machine.

It is also clear from the claims, specifications, drawings, and file wrapper that the Bartelt patent, including claim 16, was intended to apply to intermittent-motion machines, and that it was not intended to apply to continuous-motion machines. It is also clear on the basis of all the credible evidence that the Bartelt patent does not in fact disclose

or teach a person possessing ordinary skill in the art of designing or making packaging machines how to design or make a continuous-motion packaging machine.

In the amendment filed January 7, 1952 (p. 70 of file wrapper), cancelling five claims and adding six new ones, the attorney for the applicant stated under "Remarks" at pages 78–79:

"In reconsidering claims 2, 5, 7, and 8 and in considering the new claims, attention is directed to the fact that applicant's disclosed machine is characterized and distinguished from the prior art by the intermittent step by step advance not only of the row of connected bags but also of the conveyor by which the separated bags are presented to the filler and sealer. The advance of the bags *alternates* with the advance of the conveyor while still connected to the other bags and thus is positively controlled at all times. At the same time, all of the operations are performed on the connected strips and on the separate bags during the dwells of the strips and conveyor. * *

"This manner of advancing the strips and bags is contrasted with that of the principal reference to Robinson as well as other cited art in which the strips and the separated bags advance *continuously*, all of the operations being performed while the strip or bag is *in motion*. The disadvantages of such an arrangement are obvious."

In the amendment filed January 16, 1953 (p. 85 of the file wrapper) *after* adding new claim 31 (claim 16 of the patent), the attorney for the applicant made the following statement under "Remarks" at page 88:

"An important feature of applicant's invention is the manner in which the bag strip and the conveyor are advanced. Both move intermittently but the advance of one *alternates* with the advance of the other, that is, the strip moves during a dwell of the conveyor and then, while the strip is dwelling, the conveyor moves. This alternate

advance provides more positive control of the bags and enables the strips to be uniformly sealed and cut. None of the references of record are effective to suggest such an alternating movement of the bag strip and the conveyor. In Robinson, both the strip and the conveyor move continuously. Clearly, therefore, this reference teaches neither the intermittent motion of both nor the alternate advance of the two."

In the same amendment, under "Remarks," the following statement appears with specific reference to new claim 31, now claim 16:

"New claim 31 distinguishes from the other claims by including a somewhat more general recitation of the advance of the strips and the conveyor but defines the filling operation as taking place *after the bag is severed* from the bag strip. As pointed out in the amendment of April 6, 1950, this enables the bags to be formed from a continuous strip but, at the same time, the bag is freed from the strip before being filled so that the bag walls may be separated easily to prepare the bag for receiving the material to be packaged. Since neither the references of record nor any art known by the applicant teaches this feature, this claim is believed to be allowable."

In the communication from applicant's attorneys to the Commissioner of Patents, filed March 10, 1953, under "Remarks," at page 92 of the file wrapper (Exh. 66), the following statements appear after specific reference to a number of original claims, including claim 31:

"During the interview [a recent interview with the Examiner in charge

of the application], the various differences and resulting advantages with those of the prior art were pointed out. *Primary among these differences is the intermittent advance of the bag strip and the conveyor with the advance of the two alternating, that is, one moves, while the other is dwelling.*" (Emphasis supplied.)

The plaintiff breaks down the elements described in claim 16 as follows:

a) "A packaging machine having, in combination,"

b) "means for converting strip material into a row of bags connected at their adjacent edges,"

c) "and for advancing the bags edgewise along a predetermined path to present the leading bag to a gripping position,"

d) "means operable after said leading bag has reached said gripping position to separate such bag from said row,"

e) "a conveyor disposed beyond the end of said path operable to receive and grip the leading bag before cut-off thereof,"

f) "mechanism for advancing said conveyor to carry the gripped bag along an extension of said path,"

g) "a filling mechanism for depositing material in a bag supported by said conveyor,"

h) "and mechanism operable in timed relation to the advance of the conveyor for opening a supported bag thereon and delivering material from said filling mechanism into the bag." [2]

The elements enumerated above were either explicitly disclosed by prior art

---

**2.** Claim 15 of the Bartelt patent describes substantially the same elements and more. Thus, in column 18, lines 24 to 41, appears the following:

" * * * means operable during a succeeding dwell of the strips to sever the terminal cross-seal intermediate its edges and form a bag, a conveyor beyond the end of said path adapted to receive and grip the leading end portion of the strips before cut-off thereof,

mechanism for advancing said conveyor step by step during the successive dwells of said strips, a filling mechanism spaced along said conveyor beyond the position of initial gripping of the cut-off bag and alined with the open end of such bag in a subsequent dwell position thereof, means operable during dwelling of said conveyor to deposit material into the bag disposed opposite said filling mechanism, and means dis-

or were such that, in the light of the prior art at the time the application for the Bartelt patent was filed, their subject matter would have been obvious to a person having ordinary skill in the art of making packaging machines.

The machine of the Bartelt patent operates on a generally horizontal plane in contrast to the vertical plane of some prior art machines, and form a connected row of flat bags. But both the horizontal plane arrangement and the formation of a connected row of flat bags were old in the prior art. Both occurred in the Dalton patent (hereinafter "Dalton") No. 2,326,931, applied for April 24, 1940, and granted August 17, 1943, (included in Exh. N), which disclosed a horizontal, intermittent flat-pouch forming machine extensively commercialized by its grantee, the Reynolds Metals Company, through the forties and early fifties (Stipulation, Exh. 3). The Dalton machine was in substance identical with the pouch-forming half of the Bartelt patent.

While the machine of the Dalton patent was depicted in the drawings only through cut-off of the upstanding open-topped flat pouch, the patent specification directed the trade's attention to such fact with the teaching that the machine was consequently adapted for association with prior art pouch-receiving, filling and top-sealing instrumentalities, thereby disclosing conceptually a principal object of the machine of the Bartelt patent.

The teaching of Dalton is found in the third paragraph on page 4 of the patent, first column, lines 36 through 51:

"An important practical working advantage of the machine above described is that the bags are formed in up-right position with the open mouth on top; this is contrary to the usual flat bag-forming methods, and permits auxiliary bag filling and sealing machinery to be located directly

posed at a subsequent dwell position of the filled bag engageable with the open end portion thereof to seal the latter closed."

adjacent to the cutting means and it is within the purview of our invention to include mechanical spring fingers or other gripping means to advance the bags, as formed, from the cutting station, directly filling the same by conventional filling apparatus and thereafter seal the top of the filled bags by a conventional hot plate mechanism, and the advantages of such simplified forming, filling and sealing mechanism will be readily recognized by those skilled in the art."

The quoted paragraph did not mention the step of opening the bag, but it would have been obvious to anyone even remotely connected with the art that the top of the bag must be opened prior to any attempt to fill it by gravity.

Dalton is not cited by the Patent Office. It is not among the cited references listed on page 18 of the Bartelt patent.

Another prior art patent, also *not* cited by the Patent Office, but showing suction cups as the pouch opening means in a flat-pouch forming machine, was the Vergobbi patent, No. 2,577,386 (part of Exh. N), granted to defendant on December 4, 1951, on the application of defendant's then engineer-employee, John G. Vergobbi, filed August 14, 1946.

The Vergobbi patent specification contained teaching to the trade to such effect in its specification paragraph, column 8, line 59 et seq., reading:

"From the description above it will be seen that the present bag forming apparatus is adapted to produce a *flat bag* of heat sealable material such as 'Plyofilm' provided with face to face marginal seams whereby to produce a bag which may be used to advantage *in the production of an hermetically sealed container for dehydrated foods* or the like. It will also be observed that the present bag opening and transferring mechanism may be used with

See also claim 5 at line 13 et seq.; claim 6 at line 25 et seq.; and claim 10 at line 61 et seq. Plaintiff does not charge infringement of any claim except claim 16.

advantage *for supporting and transferring other types of flat bags into a desired operative position."* (Emphasis supplied.)[3]

The plaintiff heavily emphasizes that aspect of claim 16 which describes the gripping of the leading bag by the conveyor as taking place before it is cut off from the row of connected bags. The following teaching in the Verboggi patent, column 6, lines 55 to 60, which appears in the Vergobbi application filed in 1946 (Exh. EEE, p. 12, lines 8 to 12), also antedates claim 16:

*"Simultaneously* with the *severing* operation *or preferably immediately prior thereto* the mouth portion of the endmost bag section is engaged by the bag opening and transferring mechanism 36 which is arranged to support the bag during and after severance thereof."* (Emphasis supplied)

The disclosures in the Dalton and Vergobbi patents and patent applications constituted prior art relevant to the patentability of the machine described in the Bartelt application and should have been considered by the Patent Office before granting the Bartelt patent. In fact, neither was cited or considered.

The basic concept provided by claim 16, and alleged to be infringed by the accused machines, was stated by plaintiff's counsel in the course of the trial:

"The COURT: * * * Are you in a position to state, Mr. Wolfe [plaintiff's counsel], in what respect the machine, the patent in suit, advanced the state of the art as it existed before the filing of the application?

"Mr. WOLFE: Yes. I think the basic concept which is provided was in forming a flat pouch as a part of a flat web, and then taking that under control, severing it, and then advancing, opening and filling while still under control."

(Transcript, p. 325)

Plaintiff restated its concept of the essence of claim 16 in paragraph 9 of Plaintiff's Proposed Findings of Fact in these words:

"Thus, according to the claim, the end bag on the strip or web is gripped by a conveyor before it is cut from the web thereby maintaining the bag under control and then after the bag has been separated from the web and while it is still held by the conveyor, the bag is opened and filled."

I find the defendant's witness Bateman to be a dependable witness possessed of extraordinary competence and expertise in the art of devising, designing and developing packaging machines. I find that he is thoroughly familiar with the prior art, with the machine of the Bartelt patent, and, of course, with the accused machines. I find that he is also thoroughly familiar with the varying degrees of skill required of and possessed by persons employed in the design and development of packaging machines in 1948 and 1949.

On all the evidence, including the testimony of Mr. Bateman, I find that the differences between what is claimed in claim 16 and the prior art are such that they would have been obvious at the time the "invention" was made to a person having ordinary skill in the art of designing packaging machines.

I find no novelty in the combination described in claim 16. Bartelt discovered no new mechanism or other component. Every element in claim 16 was known to prior art. Bartelt brought together these elements but added nothing to the total stock of what was previously known.

---

3. This teaching constitutes prior art even though the Vergobbi patent was issued after the filing of the application in the Bartelt patent since the teaching was included in the Vergobbi application (Exh. EEE, p. 16, lines 10 to 19) which was filed before the Bartlet application. Hazeltine Research v. Brenner, Commissioner, 1965, 382 U.S. 252, 256, 86 S.Ct. 335, 15 L.Ed.2d 304.

It is interesting to note in this connection that claim 16 of the Bartelt patent was first added to the Bartelt application in January, 1953, or after the issuance of the Vergobbi patent.

The combination of the elements described in claim 16 and the ordering and timing of the sequence of their movements did not, in the light of existing prior art, require the faculty of invention and would have been obvious to persons having ordinary skill in the art of designing packaging machines.

The machines of the Bartelt patent have been commercially successful. They have been purchased and used by many business enterprises to package a variety of products. Twenty of these products in completed packages are shown in Exhibit 15. I am not persuaded by the evidence, however, that the commercial success of the Bartelt machine is attributable to the embodiment in the machine of the elements recited in claim 16 as distinguished from the embodiment of those described in the other fifteen claims. For example, an important factor in the commercial success of the Bartelt machine has been its versatility resulting from the fact that it can be easily adapted for making and filling bags of different sizes. The means to vary the width of the bags are described in claim 1 of the patent, not in claim 16. A continuous machine, on the other hand, is not adjustable to produce bags of different widths. Thus far, each continuous machine can only be made to produce bags of the particular width for which the machine is designed.

I turn now to the question whether claim 16, even if it were valid, is infringed by the accused Kool-Aid machines.

The accused machines perform an end function of forming and filling bags which is similar to the function performed by the machine of the Bartelt patent, but they accomplish this result by non-equivalent means operating in a substantially different manner. Because of basic differences in design, construction and operation, each of the accused machines produces 420 completed packages per minute as against the maximum of 125 per minute produced by the machine of the Bartelt patent.

The inadequacy of the machine of the Bartelt patent to meet the needs of some users of packaging machines became evident in 1958. In September of that year, R. T. French Company ("French"), a purchaser and user of the Bartelt machine, asked the plaintiff for machines capable of greater speeds. Plaintiff had not yet developed a continuous machine and its intermittent machine was at that time capable of producing no more than 60 to 70 packages per minute. Plaintiff proposed to meet the request in two steps, the first by developing an intermittent machine capable of producing 100 to 125 packages per minute, and secondly, by developing a continuous-motion machine. Plaintiff succeeded in making an intermittent machine that produced a maximum of about 125 packages per minute, but did not begin to work on a continuous machine until February, 1960, when plaintiff was taken over by Riegel Paper Company. In February, 1960, however, defendant's subsidiary, Delamere & Williams, Ltd., actually delivered its first continuous machine to R. T. French Company in Rochester, New York, and published a description and picture of it in the February, 1960, issue of Packaging Progress (Exh. Q). It was not until more than a year later, in 1961, that plaintiff had developed and placed a continuous machine on the market. Thus, more than ten years elapsed from the time the application in the Bartelt patent was filed before plaintiff and its predecessor produced a continuous machine despite their intimate familiarity during that period with the design and operation of the intermittent machines of the Bartelt patent which plaintiff claims teaches the making of a continuous machine. During this ten-year period Harold L. Bartelt, the designer of the machine of the Bartelt patent, was actively engaged as president of the plaintiff's predecessor and of the plaintiff in directing their businesses which included the commercialization of variations of the intermittent machine of the Bartelt patent.

In contrast, the continuous machines of Delamere & Williams had manyfold the production rates of plaintiff's intermittent machines. The rate of defendant's prior art continuous ALF teabagger[4] was 300 per minute, and the rates of the defendant's continuous machines accused in the complaint were:

| | |
|---|---|
| The First French Machine, | 200 per minute; [5] |
| The Quaker Oats Machine, | 360 per minute; [6] |
| and the still accused | |
| Kool-Aid Machine, | 420-plus per minute, |

---

or just over 7 packages per second.

In the accused Kool Aid machine, each upstanding pouch after cut-off from the web is carried through the opening, filling and top-sealing operations supported on the flat upper surface of one of an endless train of uniformly spaced apart, gripper bearing carriers, which are driven counter-clockwise around and around the oval, lower level, work track of the machine in a course of travel which for a considerable distance in their approach to the cut-off knives are directly beneath the bottom edge of the advancing web, at the differential speed rates of a 4-inch advance of carrier train to a 2¾-inch advance of web per cycle between cuts, such that each carrier advances its pouch after severance and gripping, at the ratio of 16 to 11 faster than the pouch material had been advancing as part of the unsevered web.

*Before* they reach the cut-off knives, the faster moving carrier jaws, as they come astride the bottom edge of the slower moving, leading end of the web, are held by the cam in slightly open position, in which their gripping surfaces contact the outer surfaces of the bottom edge of the web so lightly as not to interfere with the slower advance of the web and with the relatively faster advance of the carrier jaws sliding over the web.

While affixed to the web, each leading Kool-Aid pouch is advanced its width of 2¾ inches between cuts per cycle, and as

shown by the Exhibit 76 sketch of plaintiff's witness Mr. Young, and his testimony thereon at R. p. 173, "it appears that *two* pouches to the left of cut off are being slidably gripped." So in their advance to cut-off while the slower moving web per Exhibit 76 advances twice 2¾ inches=5½ inches, the faster traveling gripper jaws advance twice 4=8 inches, which means that the frictional "slide" has an actual length of 8-5½= 2½ inches during which the grippers contact, but exercise no control, advancing or otherwise, upon the web.

At the end of such slide, and immediately *after* the pouch is cut off, the cam is abruptly and completely released, which causes the jaws of the gripper to snap shut and thereafter to hold the pouch securely upright on its carrier throughout subsequent operations, until the cam is later actuated on the far side of the machine to open the jaws and permit discharge of the filled pouch from the machine. It is clear from the evidence that such critical, snap shut grip occurs subsequent to the cut-off.

Functionally the sliding contact between jaws and web, occurring before and terminating in the final snap shut movement into the final "dwell," is insufficient to change the speed of the contacted web, or to interfere with its movement, else the faster travel of the jaws would tear the more slowly moving unsevered web.

---

4. Williams patent No. 2,556,382, granted in 1951, application filed in 1946. The ALF machine is shown in Exhibit S.

5. See Exh. AE (R. T. French machine drawing).

6. See Exh. AF (Quaker Oats machine drawing).

The timing was visually apparent in the motion picture showing of the accused Kool-Aid machine operation during and following cut-off, where one could observe how each pouch was jumped forwardly *immediately after its severance* from the web, so as to be thereafter carried through subsequent operations, spaced well apart to both front and rear, from the adjacent pouches.

The plaintiff contends that the sliding contact of the gripper jaws with the web before cut-off is the equivalent of the gripping of the leading bag described in claim 16. I find, however, that the two actions are essentially different. As described in claim 16 the grip of the gripper on the leading bag before its cut-off is a firm grip that prevents the gripper from sliding over the web. It is difficult to see how there could be any question about this. The specifications make quite clear that this is the kind of grip that claim 16 is speaking about.[7]

The gripping means in the accused Kool-Aid machines do not grip the web *before* cut-off of the pouch as called for by claim 16. They grip the pouch *after* it has been cut off from the strip of connected bags. That the difference is of critical importance is clearly established by the evidence and is further confirmed by the vigor with which plaintiff attempted to persuade the Court that the grippers in the accused machines grip the web *before* cut-off.

During its travel *after* cut-off, the bottom edge of each pouch is held firmly gripped by a gripper,[8] consisting—on the far side—of a flat stationary jaw of about the same width as the pouch, integral with and projecting upwardly from the flat top of its carrier, and—on the near side—of two upstanding parallel fingers, pivoted at their lower ends, one on the lower front end, the other on the lower rear end of each carrier, which fingers are spring-stressed constantly to urge their tops inwardly toward closing engagement with the stationary jaw, against the opposing outward stress of a cam associated with a curved cam-track (the subject of plaintiff's drawing Exh. 82) located inwardly of the oval.

Claim 16, the specifications, and the drawings of the patent in suit do not disclose to persons skilled in the design or construction of packaging machines how to design or construct a continuous-motion packaging machine.

As found earlier in this opinion, the claims in the Bartelt patent were not designed or intended to apply to continuous-motion packaging machines. I find that the patent in suit does not in fact contain disclosure or teaching adequate to enable persons skilled in the art of designing or making packaging machines, to make an operative, continuous-motion, pouch-forming and filling machine.

*Conclusions of Law*

■ Claim 16 of the Bartelt patent is invalid for want of invention over prior art.

The differences between the subject matter of claim 16 and the prior art are such that the subject matter as a whole would have been obvious at the time the claimed invention was made to a person having ordinary skill in the art of making packaging machines. Claim 16 is therefore invalid by virtue of the provisions of 35 U.S.C. § 103. Graham v. John Deere Co., 1965, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545.[9]

■ The failure of the Patent Office to consider the Dalton and Vergobbi patents in the course of the prosecution of the application for the patent in suit

7. The primary and ordinary meaning of the verb "grip" is "to seize, or lay hold on tightly and tenaciously; to grasp firmly." Webster's New International Dictionary of the English Language, Second Edition (Unabridged). The same definition is given in the third edition.

8. See plaintiff's drawings, Exhs. 75 and 76.

9. The following are the pertinent statutory provisions:

    35 U.S.C. § 282: "A patent shall be presumed valid. The burden of estab-

dispels the presumption of validity of claim 16 which would otherwise exist as against such prior art. T. P. Laboratories, Inc. v. Huge, 1966, 7 Cir., 371 F. 2d 231, 234; Felburn v. New York Central R. R. Co., 1965, 6 Cir., 350 F.2d 416, 421; Monroe Auto Equipment Co. v. Superior Industries, Inc., 1964, 9 Cir., 332 F.2d 473, 481. It is irrelevant that apparently no searcher of the prior art availed himself of the knowledge disclosed in either or both of the two uncited patents. Graham v. John Deere Co., *supra,* 383 U.S. at page 36, 86 S.Ct. 684.

The burden of establishing the invalidity of claim 16 rests nevertheless on the defendant. I find that the defendant has sustained its burden.

■■ Bartelt discovered no new individual component and there was no novelty in any portion of the operations described in claim 16. "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162. The timing and sequence of the operations described in claim 16 was experimentation indicated by and falling within the scope of the prior art. In such a case, improvement in the result is not sufficient to overcome the defense of obviousness. Graham v. John Deere Co., *supra;* Koppers Company, Inc. v. Foster Grant Co., Inc., 1968, 1 Cir., 396 F.2d 370. As was stated in the latter case, at page 372,

"* * * to grant a patent to the first person who finds the exact combination when experimenting within a known field could give too much force to the patent laws."

lishing invalidity of a patent shall rest on a party asserting it. * * *"

35 U.S.C. § 103: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter

■ The fact that the machines of the Bartelt patent have enjoyed substantial commercial success does not render claim 16 valid. The question of patentable invention is not a close one in this case and the commerical success of the machines has not been shown to have flowed from claim 16. Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Beaver Cloth Cutting Machines, Inc. v. H. Maimin Co., 1965, 2 Cir., 343 F.2d 442.

■ Claim 16, if valid, was not infringed by the accused Kool-Aid machine.

The accused machine, being a continuous-motion machine, does not fall within the scope of claim 16.

What was stated by the court in Doble Engineering Co. v. Leeds & Northrup Co., 1943, 1 Cir., 134 F.2d 78, 84-85, is pertinent here:

"* * * [A]s we see it our problem is to determine first what a patentee intended to claim as his invention or discovery and second upon what invention or discovery the patent office intended to grant a temporary monopoly. To make this determination we turn to the words of the patent, viewing them as objectively as we would view the words of any ordinary contract. The rule that the claim or claims of a patent measure the scope of the invention is too well established to call for the citation of authorities and equally well established is the rule that claims are to be construed with reference to the specification and in the light of the drawings and of the prior state of the same and analogous arts. That is, a claim in a patent, like a clause in a contract, is to be construed in connection with the other terms of the instrument of which it forms a part and the whole instrument is to be interpreted with refer-

sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *"

ence to the circumstances surrounding its inception."

Viewing claim 16 in this light it is clear that it was intended to apply, and did in fact apply, to intermittent-motion packaging machines and not to continuous-motion machines.

Additionally, the concept asserted by the plaintiff to constitute the invention claimed in claim 16 is not in fact embodied in the accused machine. The incorporation of the concept contained in claim 16, or its equivalent, would render the accused machine inoperative.

"* * * [M]ere application of claim phraseology is not enough to establish infringement, nor is similarity of result. There must be real identity of means, operation and result. * * * Thus, where a device is so far changed in principle that it achieves the same result by a different mode of operation, it is not an equivalent of the patented structure or an infringement of the claim even though it may fall within the literal words of the claim." Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 1952, 7 Cir., 194 F.2d 945, 947. See also Skirow v. Roberts Colonial House, Inc., 1966, 7 Cir., 361 F.2d 388, 391.

The accused machine not only does not fall within the language of claim 16, but accomplishes its result by different means, that is, by substantially different, non-equivalent design, construction, and mode of operation. Furthermore, because of the speed and smoothness of operation resulting from the skillful utilization of these different means, the accused machine possesses a productive capacity about three-and-a-half times greater than that attained by the machines of the Bartelt patent.

The plaintiff has failed to prove by a preponderance of the credible evidence that the accused machine has infringed claim 16 of the patent in suit.

Accordingly, the Court concludes that claim 16 is invalid, and, if valid, is not infringed by the accused machine.

■ Defendant's prayer for an award of counsel fees is denied. The Court is not satisfied by the evidence that plaintiff's claim of infringement against the defendant has been asserted in bad faith, or that in prosecuting its claim of infringement against the defendant the plaintiff has been actuated by improper motives, or that it brought and prosecuted this action knowing or believing that its claim was without merit. The Court is not satisfied by the evidence that this is the exceptional case under 35 U.S.C. § 285.[10]

Judgment will be entered dismissing the complaint.

---

10. 35 U.S.C. § 285 provides as follows: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."