**CONTOUR SAWS, INC., Plaintiff, Appellee,**

v.

**The L. S. STARRETT COMPANY, Defendant, Appellant.**

**Nos. 71–1081, 71–1082.**

United States Court of Appeals, First Circuit.

June 29, 1971.

James R. Custin, Milwaukee, Wis., with whom Robert L. Thompson, Boston, Mass., and Ira Milton Jones, Milwaukee, Wis., were on the brief, for Contour Saws, Inc.

Herbert P. Kenway, Boston, Mass., with whom Robert J. Horn, Jr., and Kenway, Jenney & Hildreth, Boston, Mass., were on the brief, for The L. S. Starrett Co.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Our prior opinion in this action for infringement of plaintiff's Anderson Patent, No. 3,315,548, now Re. 26,676, disposed of all issues on the merits except the question whether the disclosures in earlier German Patent No. 974,524 rendered obvious the tempering process described in plaintiff's patent. 428 F.2d 314 (1st Cir. 1970). Both patents relate to the process of making metal-cutting band saw blades, which require a combination of hard, high-speed steel cutting teeth and a flexible, low alloy steel carrier body. Both patents teach a process of heating the bimetal tool to a high temperature of 2150°–2275°F, appropriate for hardening high-speed steel, and then tempering it at an unconventionally high temperature. While the first step overheats and degrades the softer spring steel used for the carrier body, the subsequent tempering proves to rectify the damage of the prior overheating.

The question which remained in our minds was whether the German patent, which described the carrier body as comprising steel alloyed with manganese or manganese and silicon and identified the proportions in two "particularly" usable alloys, could be said to have been applicable to or to have suggested application to the steel covered by the Anderson patent. The latter had identified as "entirely satisfactory" an alloy known as AISI-SAE No. 6150, but stated that "steel alloys other than this one will meet the requirements."[1]

We therefore remanded the case to the district court for resolution of the following issues:

"Taking the German patent as referring to band saw blades, did it indicate to one skilled in the art that the curative effect of the tempering would apply in the case of blade steels, (1) approximating 6150, or (2) reasonably found to be within plaintiff's patent, having in mind the broad language thereof, or (3) did it at least sufficiently suggest such possibility, so that to try its effect on such steels would not be inventive? If any of these questions are answered in the affirmative, judgment is to be entered

---

1. No. 6150, in addition to containing carbon, magnesium, and silicon, also contains chrome and a small proportion of vanadium. The characteristics of other suitable steels were phrased in terms of tolerance to certain hardening temperatures, range of final hardness after tempering, resistance to fatigue, and low cost.

for defendant of invalidity of the patent." 428 F.2d at 319.

The district court answered the first and third questions in the affirmative but gave no answer to the second inquiry. Plaintiff appeals.

Three experts called by defendant testified, in substance uniformly, that the German patent indicated that the curative effect of the tempering described therein would apply to a steel approximating No. 6150, and to steels covered by the Anderson patent, and that the German patent suggested that it would be obvious to try its process on a steel such as No. 6150. Considerable supporting testimony was adduced to the effect that, as of the date of the German patent, both German and American documents listed specifications for hot worked spring steels, said to be similar in their composition to both the steels in the German patent and No. 6150. In particular, a German list of four high grade steels contained one which was testified to as "essentially the same" as one steel described in the German patent, a second as "exactly the same" as the other steel described in the German patent, and a third as "equivalent" in the range of proportions for each component to No. 6150. According to defendant's experts, a metallurgist interested in putting into practice the German patent and finding that the precisely described steels were not available, would begin by choosing a steel from such a list, including No. 6150. Plaintiff's witnesses, while uniformly answering the three critical questions in the negative, conceded on cross-examination that the tempering taught by the German patent compensated for the prior overheating —as to No. 6150 and as to the other alloys.

■ Plaintiff now for the first time challenges the form of the questions put by defense counsel to defendant's experts and the findings of the court on the ground that they spoke as of the present, rather than as of the date of the German patent, and therefore involved the use of hindsight, contrary to the command of 35 U.S.C. § 103. All three of defendant's experts were initially asked whether they had read this court's opinion, which, as plaintiff acknowledges, made clear the time frame for inquiries as to obviousness. On that basis they were then asked whether the German patent "indicates" that the curative effect of tempering "would" apply to blade steels approximating No. 6150 steel and steels covered by plaintiff's patent and "would" suggest that the process be tried on a steel such as No. 6150. Their answers to all questions were "Yes". At no time during direct examination—and there were at least nine opportunities—or during cross-examination, was there any indication from plaintiff's counsel that he was aware of or unhappy with any possible ambiguity as to the time frame in which the questions and answers as to obviousness were given. Moreover, as we have indicated, the testimony as to the equivalence of various steels was based on their known existence as of the date of the earlier patent. To labor the point on appeal as one of clear error is either ingenuousness or its opposite, but, in any case, not persuasive.

Similarly labored is the plaintiff's argument that the district court erred in misapplying the "obvious to try" test. Plaintiff asserts that the "findings that involve the 'obvious to try' test are not responsive to this Court's questions." We find this contention difficult to understand, for the third question asked by us, with which plaintiff finds no defect, was answered by a simple affirmative by the district court. Plaintiff elsewhere indicates that it is referring to comments or questions by the court during trial, the criticism again being that the court was calling for appraisal with the benefit of hindsight. Here, too, the time frame was by no means clearly in the present, and now objecting counsel made no effort to clarify. In any event, it is clear that the thrust of the inquiries at trial was the obviousness of applying the specific method, as distinguished

from a general direction of experimentation, taught by the German patent to substantially equivalent known alloys, Koppers Company v. Foster Grant Co., 396 F.2d 370, 372 (1st Cir. 1968). The factual teaching is that the unconventional tempering compensated for prior overheating; the inference following from such fact is that substantially equivalent or similar alloys would react the same way. "[S]uch an *inference of fact may*, at times, be enough to justify drawing the ultimate *conclusion of law* that the claimed subject matter as a whole would have been obvious under section 103." Application of Marzocchi, 439 F.2d 220, 223 (C.C.P.A., 1971).

■ One argument of greater substance is based on the testimony of one of plaintiff's employees, Brabec, who had conducted tests on a steel resembling one described in the German patent and on No. 6150. The test results, testified to but not documented, showed that the tempering process after overheating taught by the German patent increased the resistance to fatigue of No. 6150 but decreased the resistance of the German-type steel. The argument is that the tests show the German patent to be inoperable and hence of no relevance to obviousness. While the tests indeed demonstrated that the German process worked better with No. 6150 than with one of the steels described in the German patent, we do not draw the conclusion that the German patent did not work with the German-type steel. The difficulty lies in comparing a highly heated but moderately tempered steel—which, as Brabec himself testified, while hard enough to cut, had saw teeth too brittle for use—with a highly heated and unconventionally tempered steel—which was neither too soft nor too brittle. The latter, indeed, seems to us to

be usable as a band saw blade. That its resistance to fatigue was somewhat less than a steel which would not be usable does not impress us except perhaps as some indication that the German tempering process did not "fully" compensate for initial overheating. In sum, even if Brabec's testimony were the only evidence in the case, we would not be disposed to conclude that a single purpose test on only one of two described steels proved overall inoperability of the German patent.

■ But Brabec's testimony was not the only evidence as to operability. Contradicting this was the testimony of Dr. Adams, one of defendant's expert witnesses in the prior trial who was called adversely by plaintiff. Dr. Adams testified that his opinion that the teachings of the German patent were "true and correct" was based in part on his reading of reports of tests conducted by both parties. We cannot say that the court was compelled to credit Brabec and discredit Adams.[2] We conclude that the district court's affirmative responses to our inquiries, based on expert opinion, were not in error.

### Attorney Fees

Defendant cross-appealed from the district court's denial of its motion requesting attorney fees in connection with (1) services in the original trial, (2) services on the first appeal, and (3) services in the district court on remand. The court denied the motion "on the ground that it raises matters not within the limited purposes for which this case has been remanded to this court." Defendant claims that this litigation falls within the narrow category of "exceptional cases" in which a court by statute, 35 U.S.C. § 285, may award reasonable attorney fees. Defendant had

---

2. Indeed Brabec on cross-examination acknowledged that the German patent taught both that heating the blade to the right temperature for high speed steel would overheat the carrier and that thereafter tempering below 600°C would compensate for the damage done by overheating. Even if one of the steels described in the German patent proved in a test to be unsuitable, the impact of the patent's teaching on obviousness would not necessarily be eliminated. *Cf.* United States v. Adams, 383 U.S. 39, 52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

claimed counsel fees in its prior appeal to this court. Plaintiff contends that by our refusal to respond to this claim in our prior opinion, we foreclosed further consideration of the issue.

Such was not our intention. If our failure to make explicit reference to fees could not have been taken to leave the matter open, *see* Perkins v. Standard Oil Co., 399 U.S. 222, 223, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970), and Kemart Corp. v. Printing Arts Research Laboratories, 232 F.2d 897, 898 (9th Cir. 1956), the force of our language identifying the several factual misleadings of the court might have so been taken. We acknowledge, however, that the district court would have been better served had we been explicit.

We therefore now say that the instances of misdescription of the Belgian and German patents of which we complained in our prior opinion constitute this an exceptional case within the intendment of 35 U.S.C. § 285 and justify an award of attorney fees to defendant for the prior appeal. *Cf.* General Instrument Corp. v. Hughes Aircraft Co., 399 F.2d 373 (1st Cir. 1968). While defendant, in the interests of judicial economy and with some logic, urges us to direct the district court to award fees for efforts in that court, particularly in the first trial, we have found no case where such direction was given and are reluctant to trench upon the court's traditional discretion. Accordingly, we leave it to the district court to decide whether attorney fees should be awarded for services before it. Finally, we see no such exceptional circumstances in the second appeal as to justify an award for appellate services.

Judgment as to the invalidity of the patent in suit affirmed; remanded solely for consideration of the question of awarding attorney fees in the District Court. On the question of costs and fees in this court, we will receive written submissions, the first to be filed by defendant in 21 days.